# CIVIL ACTION NO. 4:25-cv-02799

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 1 8 2025

Nathan Ochsner, Clerk of Court

**DEBORAH SWAN,**
Plaintiff,

v.

**DEPUTY W. SHIELDS,** Individually and in his Official Capacity, and
**MONTGOMERY COUNTY, TEXAS,**
Defendants.

## CIVIL ACTION NO. 4:25-cv-02799
## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
## AND MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE KEITH P. ELLISON:

Plaintiff Deborah Swan files this Response in opposition to Defendants' Motion to

Dismiss under Rule 12(b)(6), and respectfully shows the Court as follows:

---

## I. INTRODUCTION AND SUMMARY

Defendants seek dismissal of Plaintiff's claims under Rule 12(b)(6), asserting

qualified immunity and arguing that Plaintiff fails to allege sufficient facts to

support her federal and state law claims. However, Plaintiff's Complaint pleads specific and plausible facts demonstrating that Deputy Shields—without any legal basis—falsely profiled her as mentally ill and politically delusional, created a fabricated criminal record, and intentionally misrepresented the nature of a welfare check to other agencies, causing reputational harm and constitutional injury. These allegations are sufficient to survive dismissal.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions unsupported by factual allegations may be disregarded, but factual allegations that raise a right to relief above the speculative level must be accepted. *Id.*

## III. ARGUMENTS AND AUTHORITIES

### A. Misuse of "10-96" Code and Its Constitutional Implications

In law enforcement terminology, particularly in **Texas and southern U.S. agencies,** the radio code **"10-96"** is commonly used to designate a **"mental subject"** or **"psychiatric subject."** This code is generally reserved for situations where an officer believes that an individual is exhibiting signs of **severe mental illness,** is potentially **suicidal,** or poses an **immediate danger to themselves or others.**

In Montgomery County, Texas, and other local jurisdictions, **"10-96" is used to identify individuals who may be mentally unstable and in need of psychiatric evaluation or emergency detention.** This includes scenarios where a person is believed to be:

- **Actively suicidal or homicidal;**

- **Suffering from delusions, hallucinations, or psychosis;**

- **In such distress that they cannot safely care for themselves;**

- Or otherwise considered a **threat to public safety or themselves.**

Such classifications can trigger **emergency mental health holds, investigative referrals,** and may be entered into state and federal databases. These records are then available to law enforcement, prosecutors, and sometimes other governmental

entities — affecting open records, firearm eligibility, and emergency response protocol.

## False Assignment of "10-96" Code as Retaliation or Profiling

In this case, Plaintiff alleges that **Deputy W. Shields knowingly, intentionally, unilaterally and falsely entered the "10-96" code into her official dispatch records,** with malicious intent, falsely labeling Plaintiff as mentally ill and suffering from "political delusions," despite:

- Having had **no direct interaction** with Plaintiff;

- Conducting **no psychiatric evaluation or legal required training**;

- Lacking **any corroborating evidence** of mental designation of 1096;

- And despite the actual responding officer (Deputy Holman) noting no such concerns.

This intentional **mischaracterization**, when entered into the Plaintiff's official law enforcement records and left uncorrected, **falsely communicates that the Plaintiff may be dangerous, suicidal, or psychotic** — with serious consequences for her **reputation, liberty interests, and legal rights.**

---

**Legal Consequences of False Mental Health Classification**

Falsely labeling a person as a danger to themselves or others:

- **Constitutes state action** that implicates the **liberty interest in reputation and autonomy** protected by the **Fourteenth Amendment**;

- Is **retaliatory** when motivated by the individual's political beliefs or reporting of misconduct, violating the **First Amendment**;

- And, when used to mislead public officials or chill speech, constitute **abuse of process**, **defamation**, and **fraudulent misrepresentation** under state law.

---

**Supporting Case Law**

- **Doe v. Heck**, 327 F.3d 492, 524 (7th Cir. 2003):
  "Government actors who falsely label individuals as mentally dangerous... without notice or hearing, violate clearly established constitutional rights."

- **Paul v. Davis**, 424 U.S. 693, 709 (1976):
  False and stigmatizing classifications by the state may violate due process where they alter legal status or impede protected rights.

- **Smith v. Siegelman**, 322 F.3d 1290, 1296 (11th Cir. 2003):
  "[T]he knowing inclusion of false psychological information in official government records gives rise to a § 1983 claim."

---

The "10-96" code is **not a benign or generic label**; it carries with it an implied determination that the individual poses an imminent threat due to mental instability. Applying this code to a private citizen without medical, factual, or legal

basis — especially where done by a non-responding officer with an apparent political motive — is not only **factually baseless**, but **constitutionally unlawful**.

## B. Plaintiff Has Stated Valid Constitutional Claims Against Deputy Shields in His Individual Capacity

Plaintiff alleges that Deputy Shields made materially false statements in official records indicating Plaintiff suffers from "political delusions" and is a mental health subject (10-96), despite having no interaction with her and no supporting evidence. These statements were entered into police databases and shared with external agencies, which impacted Plaintiff's liberty interests, reputation, and ability to petition the government.

Courts have long recognized that retaliatory state action in response to protected First Amendment activity gives rise to § 1983 liability. See *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). Furthermore, the creation and dissemination of a false and stigmatizing government record, combined with the denial of an opportunity to clear one's name, does violate due process. *See Paul v. Davis*, 424 U.S. 693 (1976); *Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019).

The allegations here are not mere inaccuracies—they involve deliberate fabrication of records with no legitimate purpose, accompanied by denial of redress, thus

satisfying both procedural and substantive due process concerns under the Fourteenth Amendment.

## C. Qualified Immunity Does Not Apply Where Defendant's Conduct Violates Clearly Established Law

Qualified immunity protects only those officials whose conduct does not violate clearly established statutory or constitutional rights. *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). An ethical, and reasonable officer would understand that deliberately entering false and defamatory information about a citizen into official records—without basis or contact—violates her rights under the First and Fourteenth Amendments.

Plaintiff need not cite a case with identical facts. It is well established that public officials may not retaliate against citizens for engaging in protected speech, nor may they fabricate records that harm constitutional liberty or reputation.

## D. Plaintiff Has Sufficiently Pled Municipal Liability Under Monell

Defendants contend that Plaintiff failed to plead a Monell claim. This is incorrect. Plaintiff alleges a pattern of similar conduct by Deputy Shields, who has been documented labeling citizens as mentally unstable and politically delusional without evaluation, oversight, or discipline. The complaint also identifies the

failure of Montgomery County's internal policy to review or remove false mental health codes in dispatch logs, despite actual notice.

These allegations, taken as true, state a claim that municipal policies (or lack thereof) were the moving force behind Plaintiff's constitutional injury. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019).

## E. Texas Tort Claims Act Does Not Bar Plaintiff's State Law Claims

The election of remedies doctrine under § 101.106 of the Texas Tort Claims Act does not bar Plaintiff's claims where the defendant's conduct was ultra vires, retaliatory, or outside the scope of lawful duty. See *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011). The intentional fabrication of criminal records and mental health codes—motivated by personal bias or retaliation—is not conduct within the lawful scope of a deputy's duty.

Moreover, Defendants misconstrue *Frias v. Hernandez*, 2025 WL 1831589, as blanket immunity. That case does not immunize law enforcement from all misrepresentations; it applies only where the conduct in question is within discretionary duties. Here, Plaintiff alleges unconstitutional retaliation, fraud, and falsification—not discretionary acts.

## F. Plaintiff's "Official Oppression" Claim Is Pled to Support a Pattern of Conduct, Not as a Standalone Cause of Action

While Texas Penal Code § 39.03 does not provide a private cause of action, Plaintiff included the statute to illustrate the nature and context of Defendant's abuse of power, not as a freestanding claim. Her factual allegations stand independently under § 1983 and state tort theories.

# IV. DISTINGUISHING DEFENDANTS' AUTHORITIES

Defendants rely on numerous federal and state cases to argue for dismissal under Rule 12(b)(6), qualified immunity, and the Texas Tort Claims Act. However, each authority they cite is either inapposite or distinguishable on its facts and legal context. Plaintiff addresses each below:

## A. Pleading Standard Cases (Rule 12(b)(6))

- **Ashcroft v. Iqbal**, 556 U.S. 662 (2009)
- **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007)
- **Fernandez-Montes v. Allied Pilots Ass'n**, 987 F.2d 278 (5th Cir. 1993)
- **Campbell v. City of San Antonio**, 43 F.3d 973 (5th Cir. 1995)
- **Rolf v. City of San Antonio**, 77 F.3d 823 (5th Cir. 1996)

**Distinction**: Plaintiff's complaint is not speculative or conclusory. It sets forth specific facts—dates, agency conduct, recorded statements, and documentation—demonstrating how Deputy Shields fabricated records, labeled Plaintiff with a false mental health code (10-96), and retaliated for protected First Amendment activity. These allegations meet and exceed Iqbal/Twombly plausibility standards.

## B. Qualified Immunity and § 1983 Cases

- **Brown v. Glossip**, 878 F.2d 871 (5th Cir. 1989)

- **Cunningham v. Castloo**, 983 F.3d 185 (5th Cir. 2020)

- **Jackson v. City of Beaumont**, 958 F.2d 616 (5th Cir. 1992)

- **James v. Sadler**, 909 F.2d 834 (5th Cir. 1990)

- **Leatherman v. Tarrant County**, 954 F.2d 1054 (5th Cir. 1992)

- **Elder v. Holloway**, 510 U.S. 510 (1994)

- **Geter v. Fortenbery**, 849 F.2d 1550 (5th Cir. 1988)

**Distinction**: These cases apply qualified immunity to conduct within an officer's discretionary duties. Here, Deputy Shields acted outside the scope of lawful discretion by inserting knowingly false and stigmatizing statements into law enforcement databases without contact, evaluation, or lawful basis. Qualified immunity does not protect such retaliatory fabrication of government records.

## C. Monell and Official Capacity Cases

- **Monell v. Department of Social Services**, 436 U.S. 658 (1978)

- **Kentucky v. Graham**, 473 U.S. 159 (1985)

  **Rhyne v. Henderson County**, 973 F.2d 386 (5th Cir. 1992)

- **Robinson v. Hunt County**, 921 F.3d 440 (5th Cir. 2019)

  **Los Angeles County v. Humphries**, 562 U.S. 29 (2010)

**Distinction**: Plaintiff does allege municipal liability under Monell, identifying (1) a policymaker, (2) the failure to train or correct unconstitutional profiling practices, and (3) a policy of retaining fabricated mental health records despite complaints and actual notice. These allegations suffice at the pleading stage.

## D. First, Fourth, and Fourteenth Amendment Cases

- **Colson v. Grohman**, 174 F.3d 498 (5th Cir. 1999)

  **Rich v. Palko**, 920 F.3d 288 (5th Cir. 2019)

  **Smith v. Patri**, 99 F. App'x 497 (5th Cir. 2004)

- **Jarett v. Twp. of Bensalem**, 312 F. App'x 505 (3d Cir. 2009)

  **Thompson v. Clark**, 596 U.S. 36 (2022)

**Distinction**: Plaintiff does not rely on a general right to a "correct" police report. Rather, she alleges that Deputy Shields retaliated for protected speech by fabricating mental health labels and misclassifying events to interfere with open records requests and damage her public credibility. These acts violate the First and Fourteenth Amendments (retaliation and reputational liberty) and implicate Fourth Amendment privacy interests where false criminal classification is entered without legal process or cause.

## E. State Law Immunity and Texas Tort Claims Act Cases

- **Franka v. Velasquez**, 332 S.W.3d 367 (Tex. 2011)

- **Alexander v. Walker**, 435 S.W.3d 789 (Tex. 2014)

- **Anderson v. Bessman**, 365 S.W.3d 119 (Tex. App.—Houston [1st Dist.] 2011)

- **Martinez v. Hardy**, 864 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993)

- **Sierra Club v. Cedar Point Oil Co.**, 73 F.3d 546 (5th Cir. 1996)

- **Frias v. Hernandez**, 2025 WL 1831589 (5th Cir. 2025)

- **Cedra v. RJL Entertainment**, 443 S.W.3d 221 (Tex. App. 2013)

**Distinction**: These cases involved discretionary or routine actions by state employees within the scope of duty. Plaintiff's allegations involve **ultra vires**

conduct—false statements made knowingly, with retaliatory motive, and outside the legal function of a welfare check. The Texas Tort Claims Act does not immunize intentional constitutional violations or abuse of process cloaked as legitimate action. Immunity also does not bar § 1983 federal claims.

## F. Criminal Statutes and Private Causes of Action

- **TEX. PENAL CODE § 39.03** (Official Oppression)

**Distinction**: Plaintiff does not rely on this statute as a standalone cause of action. It is cited to illustrate pattern and intent in connection with Shields' abuse of authority and retaliatory conduct.

# CONCLUSION ON AUTHORITIES

Each case cited by Defendants is either:

- Factually inapplicable,
- Misapplied to Plaintiff's clearly distinct legal theory,
- Or supportive of Plaintiff when properly understood.

Accordingly, these cases do not warrant dismissal at the pleading stage and cannot justify shielding Defendant Shields from scrutiny or liability for constitutional and state law violations.

## V. Defendants' Failure to Address All Claims Constitutes Waiver

Defendants' Motion to Dismiss under Rule 12(b)(6) is procedurally and substantively deficient because it fails to address several of Plaintiff's pleaded causes of action. Specifically, Defendants make no substantive argument as to Plaintiff's claims for **fraud, fraudulent misrepresentation, injunctive and declaratory relief,** and only passingly reference her **First Amendment retaliation** claim without offering legal analysis or challenging the factual basis alleged in the Complaint.

Under controlling law, a defendant's failure to move for dismissal of a specific cause of action constitutes waiver of that defense. Federal Rule of Civil Procedure 12(b)(6) permits dismissal only for "failure to state a claim upon which relief can be granted," and "[e]ach defense to a claim for relief in any pleading must be asserted." See **Fed. R. Civ. P. 12(b), (h)(1).** Where a defendant fails to challenge a particular claim in a Rule 12(b)(6) motion, the court should decline to dismiss it.

> "A Rule 12(b)(6) motion must address each count of the complaint. Where a defendant fails to challenge a particular claim, that claim survives the motion."

**Jones v. Experian Info. Sols., Inc.,** 982 F. Supp. 2d 268, 272 (D. Conn. 2013).

"Because [Defendant] failed to make any argument for dismissal of [the claim], the Court finds that [the claim] survives."
**Fairbanks v. Oxy USA, Inc.,** No. 1:21-CV-123-HSO-BWR, 2022 WL 4473465, at *3 (S.D. Miss. Sept. 26, 2022).

**The Fifth Circuit has similarly held that "[w]here a party fails to brief an issue raised in the complaint in a motion to dismiss, that party waives the argument." See Edionwe v. Bailey,** 860 F.3d 287, 294 (5th Cir. 2017); see also **United States v. Thibodeaux,** 211 F.3d 910, 912 (5th Cir. 2000) ("Failure to brief an issue on appeal constitutes waiver.").

Defendants' motion entirely omits any discussion of Plaintiff's separate fraud claim, fails to address her demand for injunctive relief to expunge the fabricated mental health entry, and summarily dismisses the First Amendment retaliation claim as "not apparent" without engaging in the controlling standards for retaliatory state action. This failure to contest distinct causes of action waives the right to dismissal of those claims.

Accordingly, those claims should proceed and are not properly before the Court for adjudication under Rule 12(b)(6).

# VI. Preservation of Rights and Alternative
# Request for Leave to Amend

To the extent the Court determines that any portion of Plaintiff's complaint is deficient under Rule 12(b)(6), Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). The Fifth Circuit has long held that leave to amend should be freely given unless the proposed amendment would be futile, prejudicial, or the result of undue delay.

> "Rule 15(a) evinces a bias in favor of granting leave to amend," and "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."
> *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir. 1994) (citation omitted).

> "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."
> *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002).

Here, this is Plaintiff's first opportunity to respond to a dispositive motion. No amendment has been previously requested or allowed. Plaintiff's claims are