## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**DEBORAH SWAN**,
Plaintiff,

v.

**DEPUTY W. SHIELDS**, Individually and in His Official Capacity,
And **MONTGOMERY COUNTY CONSTABLE PRECINCT 3**,
Defendants.

United States Courts
Southern District of Texas
F I L E D

JUL 2 9 2025

Nathan Ochsner, Clerk of Court

## CIVIL ACTION NO. 4:25-cv-02799

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Deborah Swan ("Plaintiff"), appearing pro se, and files

this First Amended Complaint against Deputy W. Shields, individually and in his

official capacity, and Montgomery County Constable Precinct 3 ("Defendants"),

and respectfully states as follows

### I. INTRODUCTION

This is a civil rights action brought under 42 U.S.C. § 1983 for violations of

Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United

States Constitution. Plaintiff alleges she was subjected to false mental health profiling (Code 10-96), retaliation for protected speech, and stigmatizing records being entered and maintained without cause or due process.

---

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3). Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in Montgomery County, Texas.

---

## III. PARTIES

1. **Plaintiff Deborah Swan** is a resident of Montgomery County, Texas.
2. **Defendant Deputy W. Shields** is sued in his individual and official capacities.
3. **Defendant Montgomery County Constable Precinct 3** is a political subdivision responsible for the actions of its deputies and final policymakers.

## IV. FACTUAL BACKGROUND

1. On or about June 7, 2024, Defendant Shields, without having had any personal contact with Plaintiff and without lawful basis, entered a false mental health code ("10-96") into the Montgomery County dispatch system, labeling Plaintiff as "politically delusional."

2. This false entry was made in retaliation for Plaintiff's constitutionally protected political speech and complaints to law enforcement regarding cyberstalking.

3. Defendant Shields further fabricated an incident report falsely claiming that he was the responding officer who conducted a welfare check on Plaintiff. In truth, Defendant Shields was not present during the welfare check, did not participate in it, and had no interaction whatsoever with Plaintiff at the time. On multiple occasions, Plaintiff contacted Captain Michael Atkins of the Montgomery County Constable Precinct 3 to report the unlawful conduct and request removal of the false entry.

4. Captain Atkins confirmed that the entry was made by Defendant Shields without investigation or medical basis and acknowledged that there was no internal policy or procedure for correcting such stigmatizing records.

5. Dispatch records show that on June 7, 2024, an individua named Cynthia Griffin,whose IP address was previously captured in Plaintiff's cybersecurity logs over 100 times,—and whom Plaintiff had already notified by letter

regarding cyberstalking—called Deputy Shields and informed him about receiving the letter. Immediately thereafter, Defendant Shields contacted dispatch and ordered a mental health unit to conduct a welfare check at Plaintiff's home.

6. After the mental health unit arrived and cleared Plaintiff with no concerns, Defendant Shields called dispatch again and directed that a 10-96 entry be added to the record, labeling Plaintiff as "politically delusional."

7. Despite this sequence being fully documented in the dispatch logs, no action was taken to reverse the false entry or investigate Shields' misuse of mental health protocols.

8. Despite this knowledge, the agency failed to take corrective action, thereby perpetuating the harm and signaling institutional indifference.

9. Plaintiff continues to suffer ongoing reputational damage, emotional distress, and chilling of speech as a result.

10. In addition to the false entries described above, Defendant Shields also filed multiple fabricated incident reports on June 8, June 14, and June 23, 2024. Shields further submitted false incident reports to the Texas Attorney General, misrepresenting the June 7, 2024 welfare check as a criminal investigation and falsely claiming to be the responding officer. These fabricated filings with a state law enforcement authority were made under

color of law and without factual basis, thereby compounding the harm to Plaintiff's reputation and constitutional rights. These reports described events that never took place, further compounding the stigmatization of Plaintiff and perpetuating a false narrative of mental instability and criminal suspicion.

## V. CLAIMS FOR RELIEF

## COUNT 1: VIOLATION OF FIRST AMENDMENT RIGHTS

*Retaliation for Protected Speech (Deputy Shields)*

Defendant Shields' actions in labeling Plaintiff as "politically delusional" and instigating a welfare check without cause were done in retaliation for Plaintiff's exercise of her First Amendment rights.

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions... for speaking out."

*Nieves v. Bartlett*, 587 U.S. 391, 396 (2019).

"A plaintiff can establish a First Amendment retaliation claim by showing: (1) she engaged in constitutionally protected activity, (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing that activity, and (3) the defendant's adverse action was substantially motivated against the

exercise of her constitutional rights."

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

---

## COUNT 2: VIOLATION OF FOURTH AMENDMENT

*Unreasonable Seizure and Stigmatizing Entry (Deputy Shields)*

The dispatching of a mental health unit and entry of a false mental health code without legal or medical basis constituted an unreasonable seizure and violated Plaintiff's right to privacy.

"A seizure triggering the Fourth Amendment occurs only when government actors have, by means of physical force or show of authority, restrained the liberty of a citizen."

*Graham v. Connor*, 490 U.S. 386, 395 (1989).

Labeling a person with a mental health code absent probable cause or actual medical evaluation can constitute a form of seizure or an unconstitutional invasion of privacy.

*Doe v. Heck*, 327 F.3d 492, 510–11 (7th Cir. 2003).

---

## COUNT 3: VIOLATION OF FOURTEENTH AMENDMENT
*Denial of Due Process (Stigma-Plus Doctrine) (All Defendants)*

exercise of her constitutional rights."

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

---

## COUNT 2: VIOLATION OF FOURTH AMENDMENT

*Unreasonable Seizure and Stigmatizing Entry (Deputy Shields)*

The dispatching of a mental health unit and entry of a false mental health code without legal or medical basis constituted an unreasonable seizure and violated Plaintiff's right to privacy.

> "A seizure triggering the Fourth Amendment occurs only when government actors have, by means of physical force or show of authority, restrained the liberty of a citizen."
>
> *Graham v. Connor*, 490 U.S. 386, 395 (1989).

> Labeling a person with a mental health code absent probable cause or actual medical evaluation can constitute a form of seizure or an unconstitutional invasion of privacy.
>
> *Doe v. Heck*, 327 F.3d 492, 510–11 (7th Cir. 2003).

---

## COUNT 3: VIOLATION OF FOURTEENTH AMENDMENT
*Denial of Due Process (Stigma-Plus Doctrine) (All Defendants)*

The false mental health code entry and fabricated incident reports harmed Plaintiff's reputation and altered her legal status without any due process, violating the stigma-plus doctrine.

> "To prevail on a stigma-plus claim, a plaintiff must show: (1) the government made a false statement that harmed the plaintiff's reputation, honor, or integrity; and (2) the statement was made public and was coupled with an alteration in legal status or deprivation of a right."
>
> *Paul v. Davis*, 424 U.S. 693, 710–12 (1976); *Vitek v. Jones*, 445 U.S. 480, 494 (1980).

> "Stigmatizing charges that are likely to be widely disseminated and that significantly alter a person's legal status or rights may implicate liberty interests."
>
> *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Brandt v. Bd. of Coop. Educ. Servs.*, 845 F.2d 408, 411 (2d Cir. 1988).

---

## COUNT 4: MONELL LIABILITY

*Failure to Train or Supervise (Montgomery County Constable Pct. 3)*

The repeated failures of Montgomery County Constable Precinct 3 to investigate, remove, or correct the false entries and reports by Deputy Shields demonstrate a policy of deliberate indifference.

> "A municipality may be liable under § 1983 when execution of a government's policy or custom... inflicts the injury."

> *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978).

> "Inadequate training or supervision can form the basis for municipal liability when it amounts to deliberate indifference to the rights of persons with whom the police come into contact."

> *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

> "To establish liability under Monell, a plaintiff must show (1) a policy or custom, (2) deliberate indifference, and (3) a constitutional violation."

> *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

1. **Compensatory damages** against Defendant W. Shields in his individual capacity for emotional distress, reputational harm, and other injuries resulting from the constitutional violations;

2. **Punitive damages** against Defendant W. Shields in his individual capacity for conduct committed with reckless or callous indifference to Plaintiff's federally protected rights;

3. **Declaratory relief** against Defendants in their **official capacities**, declaring that the dispatch entry labeling Plaintiff as "10-96 – politically delusional" was false, stigmatizing, and unconstitutional;

4. **Injunctive relief** against Defendants in their **official capacities**, requiring:

   o Immediate removal or correction of the 10-96 dispatch entry;

   o Removal of all fabricated incident reports from June 7, June 8, June 14, and June 23, 2024;

   o Prohibition against future use of mental health designations without probable cause or medical evaluation;

5. **Monell-related relief**, including a finding of liability against Montgomery County Constable Precinct 3 for failure to train, supervise, and correct unconstitutional practices;

6. **Reasonable attorneys' fees and costs** under 42 U.S.C. § 1988 (if Plaintiff later retains counsel);

7. **Any such other and further relief** as the Court deems just and proper at law or in equity.

Respectfully submitted,

/s/ Deborah Swan
**Deborah Swan, Pro Se**
1318 Chesterpoint Drive
Spring, TX 77386

## CERTIFICATE OF SERVICE

I, Deborah Swan, hereby certify that on July 28, 2025, a true and correct copy of the following documents:

1. First Amended Complaint and attached Sworn Declaration

2. Proposed Summons

3. USM-285 Service Forms

4. Cover Letter to the Clerk

were submitted to the Clerk of Court, United States District Court for the Southern District of Texas, for issuance and forwarding to the United States Marshal for service upon the following Defendants

Daniel Plake, Assistant County Attorney
501 N. Thompson Street, Suite 300
Conroe, TX 77301
Montgomery County Constable Precinct 3

## DECLARATION OF DEBORAH SWAN

## IN SUPPORT OF VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
### 28 U.S.C. § 1746 UNSWORN DECLARATION

## STATE OF TEXAS | COUNTY OF MONTGOMERY

I, **Deborah Swan**, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746,

that the following statements are true and correct to the best of my knowledge:

---

## 1. Personal Background

1. I am the Plaintiff in the above-captioned civil rights action filed against Deputy Walter Shields, Montgomery County Constable Precinct 3, and John/Jane Does 1–10.

2. I reside at 1318 Chesterpointe Dr., Spring, Texas 77386, and submit this sworn declaration in support of my Complaint and Motion to Correct Fraudulent Law Enforcement Records.

   **Events Leading to the Complaint**

3. On **May 15, 2024**, I discovered that my email accounts had been accessed hundreds of times without authorization. The access logs included **IP**

addresses traced to individuals residing in my neighborhood, including some who are affiliated with the **Homeowners' Association (HOA)**. Concerned by the severity of the intrusion, I contacted a **Montgomery County detective** with whom I had previously collaborated on an elder fraud investigation. After reviewing the evidence I provided, he confirmed that the conduct constituted a criminal offense and advised me to **immediately contact the Montgomery County Sheriff's Department** to file an official report.

4. In good faith, I followed his instructions and contacted local law enforcement. Deputies, including **Deputy Vera**, responded to my home. However, they **refused to take a report** and merely advised me to "change my password." **No investigation was initiated**, and **no official report was filed**, despite the clear indicators of unlawful cyber intrusion.

5. The unlawful cyber activity persisted, and forensic review of my email login records revealed IP addresses associated with individuals residing in my immediate neighborhood. In response, I prepared and delivered written notices to six nearby residences connected to the unauthorized access. For

the record, I have never had any interaction or communication with any of these individuals—**with the sole exception of the resident at 1323 Chesterpointe Drive**, whom I have been neighbors with for 23 years. At no point have I engaged in any confrontational behavior, nor have I discussed the nature of the cyber intrusion with any of the recipients. My actions were limited to only a non-confrontational written notice intended solely to document the concern and deter further unauthorized access.

6. After the letter was received, the hacking and unauthorized activity logs stopped immediately.

---

## 3. Fabricated Welfare Check and False Records

7. On **June 7, 2024**, I was subjected to an **unwarranted mental health welfare check** at my residence. The visit was conducted solely by **Officer Harry Holman**, and the interaction remained **peaceful and non-confrontational** throughout. Officer Holman informed me that he had received a call from someone alleging that I had been **placing letters in mailboxes** and that he had been **asked to check on my well-being**.

8. During our conversation, I explained the context of the notices I had distributed and shared relevant background information with him, including

the cyber intrusion and my efforts to notify affected parties. When I asked Officer Holman **who had contacted law enforcement**, he advised me that I could **submit a public information request** to obtain that information.

9. Officer Holman remained at my residence for approximately **10 minutes**, after which he stated he saw **no cause for concern**, that he would **clear the welfare check**, and then departed.

10. Following Officer Holman's visit, I submitted a **public information request** for all related **dispatch records** to determine who initiated the welfare check. In response, I received a copy of the **official dispatch call report**.

11. Upon reviewing the report, I discovered that after Officer Holman had already left my residence and **cleared the welfare check**, a man named **Walter Shields**, who had not been present at the scene, **contacted dispatch** and **instructed them to update the incident notes**. The record explicitly states that **\*\*"W. Shields"** contacted dispatch and directed them to add the notation: *'Deborah Swan is a 10-96 with political delusions.'*

12. This was the first time I became aware of Deputy Shields' involvement. At no point had I spoken to, been evaluated by, or even met Deputy Shields. His statements were fabricated, malicious, and unsupported by any personal observation or lawful basis.

13. After reviewing the dispatch records, I researched the meaning of the **10-96 code** and learned that it refers to a **mental health designation**. Concerned by this false classification, I filed a formal complaint with Montgomery County Constable Precinct 3. Shortly thereafter, I was contacted by **Captain Michael Atkins**, a senior official within the department, and we had **two separate phone conversations** regarding the matter.

14. During our discussions, **Captain Atkins acknowledged that his department is not trained to investigate cybercrimes,** which had been the original reason for my contact with law enforcement. He stated that he would speak with **Deputy Shields** regarding the matter.

15. I asked Captain Atkins to take steps to **remove the false 10-96 mental health classification** from the dispatch records. However, he admitted that he **did not know how to correct or remove such entries,** and suggested it may **not be possible to do so**, reflecting a lack of oversight and accountability within the department. I stated the Shields was never part of this welfare check and he has never been to my home. I wanted to know why this deputy was fabricating a false profile. Atkins stated he did not know all the details and he would talk with Shields.

---

## 4. Continued Misconduct and Retaliation

11. After my discussion with Captain Atkins I filed a request to Precinct 3 asking for all reports made by Walter Shields that involved the June 7, 2024 Welfare check. On June 8, June 14, and June 23, 2024, Deputy Shields again updated or reinforced the false designation in dispatch records, thereby prolonging and escalating the defamatory profile.

12. I later filed a public records request to uncover any additional entries made by Deputy Shields. In response, Shields requested that the Texas Attorney General block disclosure, falsely claiming the welfare check was part of an "active criminal investigation."

13. He submitted a fabricated criminal incident report using the same case number as the welfare check and listed himself as the reporting officer to invoke exemptions under the Texas Public Information Act.

---

## 5. Statement of Captain Michael Atkins

14.    I contacted **Captain Michael Atkins** of Montgomery County Constable Precinct 3 to report Shields' falsified entries and misuse of law enforcement

systems.

15. Captain Atkins admitted the office was not trained to investigate cybercrimes and acknowledged that he **did not know how to correct dispatch records**.

16. When asked who regulates Deputy Shields or the Constable's Office, Atkins explicitly stated that **no oversight body exists**.

17. Despite being notified of the false entries and Shields' misuse of authority, Atkins **took no corrective action** and allowed the fraudulent mental health profile to remain in official databases.

---

## 6. Resulting Harm

18. As a licensed private investigator and board-certified specialist in cyber intelligence and human trafficking, these defamatory designations have severely harmed my professional reputation, created public stigma, and

interfered with my ability to seek protection or engage law enforcement.

19. I now live under a cloud of suspicion when interacting with government authorities, and my personal and professional safety has been compromised.

---

## 7. Comparable Cases of Awarded Damages

20. The facts of my case are comparable to civil rights cases where courts granted substantial awards for constitutional violations, defamation, and mental health-related misconduct, including:

- **Jean v. Guyger (2024, N.D. Tex.)** – $98.65 million awarded after unlawful conduct by law enforcement.

- **Billy Ray Johnson v. Defendants (2007, E.D. Tex.)** – $9 million awarded for violence and abuse of a mentally disabled man.

- **Variyam v. Hancock (Tex. 2014)** – $160,000 awarded for defamation regarding a physician's mental fitness.

- **Murphy v. Boston Herald (Mass. 2005)** – $2 million awarded for false publication causing reputational harm.

- **Tony Timpa v. Dallas Police (2023)** – $1 million awarded after wrongful death tied to mishandling of a mental health crisis.

These cases reflect that courts take seriously false mental health accusations and profiling by state actors, especially where reputational harm and due process violations are evident.

---

## 8. Declaration

I affirm that all facts stated in the accompanying complaint and this declaration are based on my personal knowledge, and I am prepared to testify to these facts under oath at trial.

Executed on this ___ day of _____, 2025

In Spring, Montgomery County, Texas

_____

**Deborah Swan**

Pro Se Plaintiff