UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Deborah Swan, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 4:25-cv-2799 |
| | § | |
| Deputy W. Shields, individually and in | § | |
| his official capacity, | § | |
| *Defendants.* | § | |

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE
GRANTED

TO THE HONORABLE KEITH P. ELLISON:

Defendants Deputy Shields in his individual and official capacities file their *Motion
to Dismiss this Case for Failure to State a Claim upon which relief can be granted*, in lieu
of filing an answer and show that they are immune from all causes of action.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. 2

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 4

ISSUES PRESENTED ..................................................................................................... 4

SUMMARY ...................................................................................................................... 5

FACTS .............................................................................................................................. 5

  Allegations entitled to be accepted as true for the purposes of this motion: ................. 5

  Additional facts the Court may consider at this stage: .................................................. 7

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED ........................................................................................................ 8

  Standard of Review: ....................................................................................................... 8

*12(b)(6) Standard of review generally:* ...........................................................................8

*The qualified immunity standard:* ..................................................................................9

Argument: ......................................................................................................................11

*Issue 1: Swan's failure to allege the existence of any of the Monell factors is dispositive of her Constitutional claims against Deputy Shields in his official capacity.* ..........................................................................................................11

*Issue 2: Swan's allegation that Deputy Shields made false statements in a police report does not state a cognizable Constitutional claim because she does not have a Constitutional right to an accurate police report.* ..........................13

*Swan failed to establish that Deputy Shields violated her clearly established right:* ...............................................................................................................13

*There is not a Constitutional right to an accurate police report:* ..........................15

*Swan's claims also fail on the admissible records:* ...............................................16

*Swan's position would have a disastrous effect on police work, public safety, and the criminal justice system:* ......................................................................17

*Issue 3: Swan abandoned her state law claims by removing them from her First Amended Complaint.* ..................................................................................18

CONCLUSION ...............................................................................................................18

PRAYER .........................................................................................................................18

CERTIFICATE OF CONFERENCE ...............................................................................19

CERTIFICATE OF SERVICE .........................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) .......................8

*Bell Atlantic Court v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007) 8

*Brown v. Glossip*, 878 F.2d 871 (5th Cir.1989) ...................................................................8

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir.1996) ............................................. 7

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir.1994) .................................................. 6

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir.2000) ............................. 7

*Colson v. Grohman,* 174 F.3d 498 (5th Cir.1999) ................................................. 12

*Cunningham v. Castloo*, 983 F.3d 185 (5th Cir.2020) ....................................... 10

*Elder v. Holloway,* 510 U.S. 510, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) ...................... 8

*Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278 (5th Cir.1993) ........................... 7

*Geter v. Fortenbery*, 849 F.2d 1550 (5th Cir.1988) ...................................... 9

*Jackson v. City of Beaumont Police Depart.*, 958 F.2d 616 (5th Cir.1992) .................... 8, 9

*James v. Sadler,* 909 F.2d 834 (5th Cir.1990) ...................................... 9

*Jarett v. Twp. Of Bensalem,* 312 F.App'x 505 (3rd Cir.2009) (unpublished opinion) ..... 14

*Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) .................. 10

*King v. Dogan,* 3 F.3d 344 (5th Cir.1994) ...................................... 17

*Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit*, 954 F.2d 1054 (5th Cir.1992) ..................................... 9

*Los Angeles County v. Humphries*, 562 U.S. 29, 131 S.Ct. 447 178 L.Ed.2d 460 (2010) 11

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ...... 10

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ...................................... 6

*Paul v. Davis.* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed. 2d 405 (1976) ............................. 13

*Pena v. Jimenez*, 31 Fed. Appx. 833 (5th Cir.2002) (Not selected for publication) ......... 11

*Rhode v. Denson*, 776 F.2d 107 (5th Cir.1985) ...................................... 11

*Rhyne v. Henderson County,* 973 F.2d 386 (5th Cir.1992) ............................... 10

*Rich v. Palko,* 920 F.3d 288 (5th Cir.2019) ...................................... 14

*Robinson v. Hunt Cty.*, 921 F.3d 440 (5th Cir.2019) ...................................... 11

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir.1996) ...................................................... 7

*Smith v. Patri,* 99 F.App'x 497 (5th Cir.2004) (unpublished opinion) (per curiam) ........ 14

*Thompson v. Clark,* 596 U.S. 36, 142 S.Ct. 1332, 212 L.Ed. 2d 382 (2022)..................... 12

**Statutes**

39 C.F.R. 111.1..............................................................................................................15

Domestic Mail Manual (DMM) § 508.3.1.3 .................................................................15

TEX. HEALTH & SAFETY CODE § 573.001(a)(1)(B) ......................................................... 16

**Rules**

FED. R. CIV. P. 12(B)(6) ................................................................................................. 7

FED. R. CIV. P. 8(a)(2) .................................................................................................. 8

FED. R. EVID. 201(b).................................................................................................... 7

**Constitutional Provisions**

U.S. CONST. AMEND. XIV, § 1 ..................................................................................... 14

## NATURE AND STAGE OF THE PROCEEDINGS

This suit was filed on June 16, 2025. Deputy Shields was served on July 1, 2025. His answer was due July 22, 2025. Defendants filed their motion to dismiss the original complant on July 17, 2025. Swan filed her First Amended Complaint on July 29, 2025. Defendants file this motion to dismiss all causes of action against them in lieu of filing an answer.

## ISSUES PRESENTED

**<u>Issue 1:</u>**   Whether Swan pled a cognizable official capacity claim against Deputy Shields considering she did not allege the existence of any of the *Monell* elements.

**Issue 2:**     Whether Swan's allegation that Deputy Shields made false statements in a police report states a cognizable Constitutional claim considering she has no Constitutional right to an accurate police report.

**Issue 3:**     Whether Swan abandoned her state law claims by removing them from her First Amended Complaint.

## SUMMARY

Swan's Constitutional claims stem from a police report prepared by Deputy Shields related to the June 7, 2024, welfare check on Swan. Swan alleges that, in the report, Shields falsely asserts that Swan has mental health problems. In addition, she alleges the report was improperly classified as a criminal report rather than a welfare check.

Swan's Constitutional claims fail because she does not have a clearly established Constitutional right to an accurate police report. Even if her allegations are true, Deputy Shields is entitled to qualified immunity from this suit.

Swan's claims against Deputy Shields in his official capacity are really claims against Montgomery County. In addition to failing to state a violation of her Constitutional rights, Swan's official capacity claims fail because she failed to plead any of the *Monell* elements.

## FACTS

**Allegations entitled to be accepted as true for the purposes of this motion:**

1. Swan "attempted to report cyberstalking and unauthorized access to her private email communication in early 2024." *Doc. 1 pg. 2 at ¶ 6.*

2. On June 7, 2024, Deputy Shields identified Swan as mental health subject, referencing code "10-96" to identify her. *Doc. 22 pg. 3 at ¶ 1.* He alleged that she suffered from

"political delusions". *Doc. 22 pg. 3 at ¶ 1.* Swan alleges Shields' statements are false. *Doc. 22 pg. 3 at ¶ 1.*

3. Swan concludes, without alleging any admissible facts, that the police report was created in retaliation for her protected political speech and complaints about cyberstalking. *Doc. 22 pg. 3 at ¶ 2.*

4. Deputy Shields received a complaint about Swan from Swan's neighbor. *Doc. 22 pgs. 3-4 at ¶ 5.* In response, Deputy Shields directed a mental health unit to conduct a welfare check on Swan. *Id.* Deputy Shields was not at the June 7, 2024, welfare check involving Swan, but Shields claimed he was the officer that conducted the welfare check. *Doc. 22 pg. 3 at ¶ 3.* The mental health deputy reported no concerns, but Deputy Shields labelled Swan as "10-96" and "politically delusional." *Doc. 22 pg. 4 at ¶ 6.*

5. Swan did not have an opportunity to refute that she was a mental health subject because there is not a procedure to allow for correcting police reports. *Doc. 22 pg. 3 at ¶¶ 3-4.*

6. Swan alleges she suffered "reputational damage, emotional distress, and chilling of speech." *Doc. 22 pg. 4 at ¶ 9.*

7. Deputy Shields filed additional fabricated incident reports on June 8, 14, and 23 of 2024. *Doc. 22 pg. 4 at ¶ 10.*

8. In response to an open records request, Deputy Shields mischaracterized the June 7, 2024, welfare check as a "criminal investigation" and falsely claimed "to be the responding officer." *Doc. 22 pg. 4 at ¶ 10.*

**Additional facts the Court may consider at this stage:**

9. The Court may take judicial notice of facts to resolve a 12(b)(6) motion without converting the motion to a motion for summary judgment. See *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.1994) (court may refer to public record when deciding 12(b)(6) motions); see also *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir.2007) (proper to take judicial notice of a state court summary judgment in deciding a 12(b)(6) motion); FED. R. EVID. 201(b) (court may judicially notice facts not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

10. Defendants may attach documents that "are referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000) (citations omitted).

11. The adjudicative facts in this case are the police report, request by Swan for the police report, and the brief to the Attorney General. *Ex. 1.* They are public records, and specifically referenced in the First Amended Complaint.

12. Defendants do not believe that the Court needs to look beyond the First Amended Complaint to grant their motion to dismiss. If the Court does look beyond the First Amended Complaint, the admissible records demonstrate that several of Swan's key facts are incorrect, specifically:

    a. Swan was suspected of committing a crime by placing non-stamped letters in her neighbors' mailboxes. Domestic Mail Manual (DMM) § 508.3.1.3,

incorporated by reference into 39 C.F.R. 111.1 ("Except for [newspapers], [mailboxes] may be used only for matter bearing postage."), *doc. 22 at pg. 13 ¶ 7* (Neighbors accused Swan of putting letters in their mailboxes).

b. The police report does not allege that it was a criminal investigation. *Ex. 1 at pg. 4 ("Nature: INFORMATION), pg. 7 ("Possible mental health issue" and "For information only"), and pg. 7 (Swan was evaluated for an emergency detention order[1] related to her mental health, not criminal activity).*

c. The brief to the Attorney General did not refer to this as a criminal investigation. *Ex. 1 at pg. 2* (the report "relates to an investigation…that did not result in conviction or deferred adjudication.")

## MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**Standard of Review:**

*12(b)(6) Standard of review generally:*

A motion to dismiss for failure to state a claim should be granted when the claimants fail to demonstrate they can prove any facts which would entitle them to relief. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir.1996). The complaint must be liberally construed in the claimants' favor and all factual allegations taken as true. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir.1993). However, "[t]he court is not required to

---

[1] Texas Mental Health Code Chapter 573 requires a person be "a substantial risk of serious harm to the person or others unless the person is immediately restrained" to qualify for an emergency detention order. TEX. HEALTH & SAFETY CODE § 573.001(a)(1)(B).

conjure up unpled allegations or construe elaborately arcane scripts to save the complaint." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1996). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (citing FED. R. CIV. P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 679 (citing *Bell Atlantic Court v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). The Court may first determine which facts are entitled to the assumption of truth, and then consider whether those facts plausibly suggest an entitlement to relief. *Iqbal,* 556 U.S. at 680. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusion." *Id.* at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted).

***The qualified immunity standard:***

The Supreme Court stated, "[t]he central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway,* 510 U.S. 510, 514, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (citation omitted).

Deputy Shields is entitled to raise immunity as a defense to Plaintiff's Section 1983 claims. *Brown v. Glossip*, 878 F.2d 871, 873-74 (5th Cir.1989) and *Jackson v. City of*

*Beaumont Police Depart*., 958 F.2d 616, 620 (5th Cir.1992). The Defendant's available qualified immunity defense, raises the Plaintiff's pleading requirements. "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." *Jackson,* 958 F.2d *at* 620 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 954 F.2d 1054, 1057 (5th Cir.1992). "[Q]uestions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery." *Jackson,* 958 F.2d *at* 620 (quoting *James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990)). "Accordingly, this circuit requires that § 1983 plaintiffs meet heightened pleadings requirements in cases, such as this, in which an immunity defense can be raised." *Jackson,* 958 F.2d *at* 620. "[P]laintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Id*. ""[A]llowing broadly worded complaints…which leaves to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity.' Further, plaintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense."" *Id*. (citing *Geter v. Fortenbery*, 849 F.2d 1550, 1553 (5th Cir.1988)).

In the Fifth Circuit, the standard for analyzing qualified immunity cases is well established:

The clearly established prong is difficult to satisfy. A right is 'clearly established' only if it 'is sufficiently clearly that every reasonable official would have understood that what he is doing violates that right. We must define the right 'with specificity.' A case 'directly on point' is not required, but 'existing precedent must have placed the statutory or constitutional question beyond debate.' In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.' This rule is a 'demanding standard,' and the Supreme Court 'repeatedly' has told us 'not to define clearly established law at a high level of generality.' Ultimately, '[t]he dispositive questions is whether the violative nature of the *particular* conduct is clearly established.' We undertake that inquiry ''in [the] light of the specific context of the case, not as a broad general proposition.''

When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. To meet that burden, the plaintiff must present evidence, viewed in her favor, satisfying both qualified-immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct.

*Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir.2020) (citations omitted).

**Argument:**

*Issue 1:* ***Swan's failure to allege the existence of any of the Monell factors is dispositive of her Constitutional claims against Deputy Shields in his official capacity.***

Swan's claims against Deputy Shields in his official capacity are a suit against Montgomery County. *Rhyne v. Henderson County,* 973 F.2d 386, 392 n. 2 (5th Cir.1992) (citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

The required elements to impose municipal liability upon a government entity under section 1983 are (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dept. of Soc.*

*Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "In order for a municipality to have liability to a plaintiff, the municipality must itself cause the constitutional violation at issue." *Monell*, 436 U.S. at 690-91. To establish liability, a plaintiff must either identify "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.*

"This 'policy or custom' requirement extends to claims for injunctive and declaratory relief." *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir.2019) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 31, 131 S.Ct. 447 178 L.Ed.2d 460 (2010)).

Swan attempts to state a *Monell* claim by alleging that Montgomery County Constable Precinct 3 either failed to train or failed to supervise Deputy Shields. Swan's claim fails on its face because the Constable is not a County Policy maker as a matter of law. *Rhode v. Denson*, 776 F.2d 107, 108-110 (5th Cir.1985) ("We are unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts may fairly be said to represent official county policy" and holding that "Denson, as a constable, lacked the power to make county policy.") The issue of whether the Constable "is a policymaker for purposes of 42 U.S.C. § 1983 liability is foreclosed by *Rhode v. Denson…*". *Pena v. Jimenez*, 31 Fed. Appx. 833, 1 (5th Cir.2002) (Not selected for publication). Swan's reliance on the Constable's action to support her claim against Montgomery County is misplaced.

Because Swan does not allege the existence of any of the *Monell* elements, her claims against Deputy Shields in his official capacity, which are actually claims against Montgomery County, should be dismissed.

**<u>Issue 2:</u>**    ***Swan's allegation that Deputy Shields made false statements in a police report does not state a cognizable Constitutional claim because she does not have a Constitutional right to an accurate police report.***

Swan summarily concludes that Deputy Shields violated her First, Fourth, and Fourteenth Amendment rights. Factually, she alleges that Deputy Shields falsely determined and documented in his report that Swan suffers from mental illness and that Shields falsely characterized a check into Swan's welfare as a criminal investigation.

***Swan failed to establish that Deputy Shields violated her clearly established right:***

The basis for Swan's First Amendment claim is not apparent to Defendants. Swan does not allege any facts supporting that she was engaged in exercising protected speech or that Deputy Shields retaliated because of that speech. See *doc. 22 at pg. 3 ¶ and pg. 5*. Generally speaking, "the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman,* 174 F.3d 498, 508 (5th Cir.1999). Swan has not alleged sufficient facts entitled to be accepted as true that demonstrate Deputy Shields violated her First Amendment Rights.

The basis for Swan's Fourth Amendment claim is not apparent to Defendants. Generally, a Fourth Amendment claim is brought for the "wrongful initiation of charges without probable cause." *Thompson v. Clark,* 596 U.S. 36, 43, 142 S.Ct. 1332, 212 L.Ed.

2d 382 (2022). Swan's reliance on *Graham v. Connor* is misplaced, the case is not on point as it does not concern an allegedly false entry into a police report. See *doc. 22 at pg. 6.* Swan's reliance on *Doe v. Heck,* also fails to identify clearly established law making it clear that an officer commits a Constitutional violation if he makes a false entry on a police report. First, the case is not on point; it is about parental rights. Second, the case is an out of circuit appellate case; it provides neither clearly established law nor binding precedent.

Swan does not allege that Deputy Shields arrested or searched her, or that charges were brought against her. Swan has not alleged sufficient facts entitled to be accepted as true that demonstrate Deputy Shields violated her Fourth Amendment Rights.

The basis for Swan's Fourteenth Amendment claim appears to be that Swan did not have the opportunity to refute the content of the police report. See *doc. 22 pg. 3 at ¶¶ 3-4* (alleging that Swan was not given an opportunity to refute that she was a mental health subject.)

The due process clause of the Fourteenth Amendment provides "nor shall any state deprive any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV, § 1. In this case, it appears Swan is suggesting she has a due process right to review and contest the police report.

Swan cites *Paul v. Davis,* to support her cause of action. *Doc. 22 at pg. 8.* In *Paul*, the Supreme Court recognized that stigma caused by defamation alone is not actionable under the Fourteenth Amendment. *Paul v. Davis.* 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed. 2d 405 (1976). The Supreme Court did state that removing previously recognized

privileges is sufficient to invoke procedural due process guarantees, but this is not in the context of an officer's statements, observations, or opinions in a police report. *Id.*, at 711. The Supreme Court reiterated that damage to reputation alone is insufficient. *Id.,* at 711-712. In this case, Swan alleges, at most, damage to her reputation. *Paul* does not clearly establish that Deputy Shields violated Swan's Constitutional right by including false information in a police report.

***There is not a Constitutional right to an accurate police report:***

An individual does not have a clearly established right to an accurate police report. *Rich v. Palko,* 920 F.3d 288, 297 (5th Cir.2019) (The Plaintiff "fails to identify a single case suggesting that an individual has a right to be free from inaccuracies in an after-the-fact police report or that an inaccurate report serves as a sort of continuing constitutional violation…") (citing *Smith v. Patri,* 99 F.App'x 497, 498 (5th Cir.2004) (unpublished opinion) (per curiam) ("[T]here is no right to a completely accurate police report.") and *Jarett v. Twp. Of Bensalem,* 312 F.App'x 505, 507 (3rd Cir.2009) (unpublished opinion) ("[T]the mere existence of an allegedly incorrect police report fails to implicate constitutional rights.")).

Because the clearly established law does not provide Swan a Constitutional right to an accurate police report, she cannot meet her burden to establish that Deputy Shields violated her clearly established Constitutional rights.

***Swan's claims also fail on the admissible records:***

Even if Swan had stated a facially valid claim, the police report and brief to the Attorney General establish that Swan's allegations are false.

Deputy Shields did not claim to have gone to Swan's residence, he wrote "Deputy did not go to this location" *(ex. 1 at pg. 7)* and "I then had dispatch ask for a mental health unit to call me" *(ex. 1 at pg. 7)*.

Deputy Shields did not falsely claim this was a criminal investigation. First, even if he had, placing letters in her neighbors' mailboxes is illegal. Domestic Mail Manual (DMM) § 508.3.1.3, incorporated by reference into 39 C.F.R. 111.1 ("Except for [newspapers], [mailboxes] may be used only for matter bearing postage."), *doc. 22 at pg. 13 ¶ 7* (Neighbors accused Swan of putting letters in their mailboxes). Second, the report does not allege that it was a criminal investigation. *Ex. 1 at pg. 4 ("Nature: INFORMATION), pg. 7 ("Possible mental health issue" and "For information only"), and pg. 7 (Swan was evaluated for an emergency detention order[2] related to her mental health, not criminal activity).* Finally, the brief to the Attorney General did not refer to this as a criminal investigation. *Ex. 1 at pg. 2* (the report "relates to an investigation…that did not result in conviction or deferred adjudication.")

---

[2] Texas Mental Health Code Chapter 573 requires a person be "a substantial risk of serious harm to the person or others unless the person is immediately restrained" to qualify for an emergency detention order. TEX. HEALTH & SAFETY CODE § 573.001(a)(1)(B).

On the evidence subject to review by this Court, Swan's claims fail because her allegations about the content of the report and brief are incorrect and even if Swan had stated a valid claim, she still could not prevail in this case.

***Swan's position would have a disastrous effect on police work, public safety, and the criminal justice system:***

Swan asks this Court to require law enforcement agencies to have a mechanism by which people can review reports and demand changes to the officer's observations, statements, beliefs, and conclusions; and if the officer does not change the report the officer can be sued.  Such a policy would have a disastrous effect.

The criminal justice system already creates a remedy to incorrect information in reports if the report results in prosecution.

Swan's position would decimate the evidence in criminal cases.  It is not hard to imagine cross-examination of an officer in a criminal trial in which the officer states he changed the report because he did not want to face a suit by an angry person.  In addition to destroying the value of the report by creating a perverse incentive for people to contest the reports, the burden on local governments to create some type of system of hearings to contest reports would be unimaginable.

In Swan's case, the system worked exactly how it is supposed to work.  Law enforcement received a complaint, identified that it may involve someone with mental health issues, and dispatched a mental health officer to make contact with the subject.  After contact, the officers wrote a report documenting their experience.  Because Swan was never detained or arrested – either for a crime or on an emergency detention order – the report

was closed.  Had Swan been arrested or detained, she could have contested the accuracy of the officers' beliefs or observations on cross-examination.

This point relates back to Swan's allegation that she was informally adjudicated. *Doc. 18 at pg. 4*.  Iinformal adjudication is a fictitious disposition.[3] Adjudication would require a hearing, at which time she could cross examine the Deputy Shields on the content of his report.

Creating another layer of contesting officers' beliefs and observations is unnecessary and would decimate the criminal justice system by incentivizing officers not to document their observations and beliefs, and by calling into question the veracity of reports modified solely to avoid litigation.

*Issue 3:* ***Swan abandoned her state law claims by removing them from her First Amended Complaint.***

Swan's amended complaint supersedes her original complaint.  *King v. Dogan,* 3 F.3d 344, 346 (5th Cir.1994).  Because Swan did not include her state law claims in her amended complaint, they are abandoned.

## CONCLUSION

Because Swan's allegations, even if true, do not state a valid Constitutional or State law claim, this case should be dismissed in its entirety.

## PRAYER

---

[3] Defendants essentially addressed this issue in their now mooted reply to Swan's response to Defendants' motion to dismiss.  In order for a mental health designation to have an effect on Swan it would have to be adjudicated.  *Doc. 15 at pgs. 2-3.*

The Defendants pray this Court dismiss this case for failure to state a claim upon which relief can be granted.  The Defendants pray for all other relief to which they may be entitled.

Respectfully submitted,

BY:　s/ Daniel Plake
Daniel Plake
Assistant County Attorney
Texas Bar No. 24062942
Federal ID No. 918023
Daniel.plake@mctx.org
501 N. Thompson St. Suite 100
Conroe, TX 77301
Phone:　　(936) 539-7828
Facsimile:　(936) 538-8079
ATTORNEY FOR
DEFENDANTS

## CERTIFICATE OF CONFERENCE

I spoke with Ms. Swan via phone on July 15, 2025 for approximately 36 minutes about the motion to dismiss her original complaint, and she was opposed to it.  I also spoke with Ms. Swan via phone on August 6, 2025 for approximately 15 minutes.  She is opposed to the relief sought in this motion.

s/ Daniel Plake

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025 a true and correct copy of the foregoing instrument was forwarded via electronic delivery pursuant to the local rules or United States Mail pursuant to Federal Rule of Civil Procedure to the following:

Deborah Swan
1318 Chesterpoint Drive
Spring, Texas 77386
justiceguard@proton.me
*Pro se plaintiff*

s/ Daniel Plake