UNITED STATES DISTRICT COURT

United States Courts
Southern District of Texas
FILED

SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUG 0 8 2025

Nathan Ochsner, Clerk of Court

**DEBORAH SWAN,**
Plaintiff,

V.

**DEPUTY WALTER SHIELDS, in his individual and official capacity;**
**MONTGOMERY COUNTY CONSTABLE PRECINCT 3;**
**MONTGOMERY COUNTY, TEXAS,**
Defendants.

Civil Action No. 4:25-cv-02799

---

# PLAINTIFF'S SECOND AMENDED COMPLAINT

---

## I. INTRODUCTION

1. This is a civil action under **42 U.S.C. § 1983** and Texas law to redress violations of Plaintiff's constitutional rights under the **First, Fourth, and Fourteenth Amendments**, as well as related state torts including

**defamation, intentional infliction of emotional distress, negligence, and official oppression.**

2. Plaintiff, a private citizen and community advocate, was targeted by Defendants through fabricated law enforcement records, false "mental health" designations (Code 10-96), and retaliatory welfare checks initiated under false pretenses after she reported politically sensitive misconduct and cyber intrusion evidence to law enforcement.

3. Defendants' actions constitute retaliation for protected speech and petition activity, unlawful seizure, stigmatization in violation of due process, and deprivation of equal protection, along with state law violations causing severe personal and professional harm.

---

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under **28 U.S.C. §§ 1331** (federal question), **1343(a)(3)** (civil rights), and **1367(a)** (supplemental jurisdiction over state law claims).

5. Venue is proper in the Southern District of Texas under **28 U.S.C. § 1391(b)** because all events occurred in Montgomery County, Texas, within this District.

## III. PARTIES

6. **Plaintiff Deborah Swan** is a resident of Montgomery County, Texas.

7. **Defendant Deputy Walter Shields**, at all times relevant, was a sworn law enforcement officer employed by Montgomery County Constable Precinct 3. He is sued **in his individual capacity** for actions taken under color of state law that violated Plaintiff's clearly established constitutional rights, and **in his official capacity** as an agent of Montgomery County for purposes of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

8. **Defendant Captain Michael Atkins**, at all times relevant, was a supervising officer employed by Montgomery County Constable Precinct 3. He is sued **in his individual capacity** for actions and omissions taken under color of state law, and **in his official capacity** as an agent of Montgomery County for purposes of *Monell* liability.

9. **Defendant Montgomery County Constable Precinct 3** is a governmental entity and law enforcement department of Montgomery County, Texas, responsible for establishing policies, customs, and training for its deputies, including Defendants Shields and Atkins.

10. **Defendant Montgomery County, Texas** is a municipal entity organized under Texas law and is responsible for law enforcement services through its Constable offices and Sheriff's Department. Montgomery County is liable under *Monell* for constitutional violations caused by official policies, customs, practices, or failures to train and supervise that were the moving force behind the injuries alleged herein.

---

## IV. FACTUAL ALLEGATIONS

### A. June 7, 2024 – Holman Welfare Check under False Pretenses

11. On June 7, 2024, **Deputy Harry Holman**, a Crisis Intervention Officer in the mental health unit, arrived at Plaintiff's residence for a "welfare check".

12. Plaintiff had never requested such a check, had no mental health issues, and had been in the process of reporting **cyber intrusions** into her personal email, including IP logs linking to politically connected individuals in her HOA.

13. Holman stated he could not disclose who requested the welfare check, but confirmed it was triggered by "letters" Plaintiff had distributed documenting the cyber intrusion evidence.

14. Plaintiff explained she had proof of the hacking via metadata and IP addresses. Holman acknowledged Plaintiff was coherent, oriented, and well cared for, and stated the following before he handed the plaintiff a card" *I am NOT saying you need this, but if you ever need us for anything feel free to give us a call."*

---

### B. June 12, 2025 – Call with Captain Atkins Revealing Shields' Role

15. On June 12, 2025, Plaintiff called **Captain Michael Atkins** to follow up on her 2024 complaint.

16. Plaintiff had obtained dispatch records showing **Deputy Walter Shields**—whom she had never met—requested the June 7, 2024 welfare check after receiving a call from **HOA member Cynthia Griffin** complaining about Plaintiff's letter.

17. The dispatch records establish that, after Deputy Holman completed the welfare check and cleared Plaintiff without incident, Defendant Shields—who had not been present, had no personal knowledge of the encounter, and had never spoken with Plaintiff—nonetheless contacted dispatch and instructed that the case notes be altered to include the false and stigmatizing statement: "Plaintiff is a Code 10-96 with political delusions." This entry was made without any medical evaluation, lawful basis, or factual

foundation, and was intended to create an official record portraying Plaintiff as mentally ill, thereby damaging her reputation, chilling her protected speech, and obstructing her ability to obtain law enforcement assistance.

18. Shields has also fabricated an incident report falsely adding himself as a responding officer alongside Holman, and reclassified the welfare check into a **criminal investigation** to invoke an Attorney General "law enforcement exception" to Plaintiff's Public Information Act request.

19. This fabrication blocked Plaintiff's access to the incident records and created an official record portraying her as the subject of a criminal investigation.

20. Shields repeated this misconduct at least **four times** in June 2024, entering a false "10-96" code (mental subject) with "political delusions" notes, despite never speaking with Plaintiff.

---

### C. Pattern, Policy, and Lack of Remediation

20. Captain Atkins admitted speaking to Shields and his supervisor, but took no disciplinary or corrective action beyond advising more "politically correct" phrasing in the future.

21. Defendants' policies allowed deputies to:

- Initiate mental health welfare checks without prior contact or investigation.

- Enter subjective "political delusions" remarks into official systems.
- Fabricate co-response in reports without verification.

22. This conduct stigmatized Plaintiff, chilled her speech, undermined her credibility, and obstructed her cybercrime complaints.

## V. CAUSES OF ACTION

### Count I – First Amendment Retaliation (42 U.S.C. § 1983)

23. Plaintiff engaged in protected speech and petitioning by reporting cyber intrusion, distributing letters, and contacting law enforcement (*see Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

24. Defendants Shields and Atkins, acting under color of law, initiated false welfare checks, fabricated reports, and labeled Plaintiff as mentally ill in retaliation for this protected activity (*see Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019))

### Count II – Fourth Amendment Unlawful Seizure / Fabricated Evidence

25. The June 7, 2024 welfare check was an investigatory seizure at Plaintiff's home without reasonable suspicion or probable cause, initiated under false pretenses (*see United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980)).

26. Shields' fabricated reports violated Plaintiff's rights under *Franks v. Delaware*, 438 U.S. 154 (1978) (prohibiting false statements in official reports).

---

**Count III – Fourteenth Amendment – Due Process ("Stigma Plus")**

27. By entering false "10-96" mental health codes with "political delusions" remarks into official databases, Defendants imposed a stigma that altered Plaintiff's legal status, interfering with her rights to petition and seek law enforcement assistance (*Paul v. Davis*, 424 U.S. 693, 701–10 (1976); *Coughlin v. Lee*, 946 F.2d 1152, 1158–59 (5th Cir. 1991)).

---

**Count IV – Fourteenth Amendment – Equal Protection**

28. Plaintiff was treated differently from similarly situated complainants due to her political associations and speech, without any rational basis (*Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

---

**Count V – Monell Liability – Montgomery County / Precinct 3**

29. Defendants' unconstitutional acts were the product of official policies or customs permitting:

- Welfare checks initiated without a valid cause.

- Fabrication of official reports.

- Use of mental health code 1096 as political retaliation.

30. This failure to train, supervise, and discipline constitutes deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

---

**Count VI – Defamation (Texas Law)**

31. Defendants published false statements in official records, accusing Plaintiff of mental illness with "political delusions," which are defamatory *per se* under Texas law (*Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002)).

---

**Count VII – Intentional Infliction of Emotional Distress (Texas Law)**

32. Defendants' conduct—fabricating reports, initiating false welfare checks, and labeling Plaintiff as mentally ill—was extreme and outrageous, intended

to cause severe distress, and did so (*Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

## Count VIII – Negligence & Gross Negligence (Texas Law)

33. Defendants breached their duty to investigate complaints lawfully, causing foreseeable harm to Plaintiff (*Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001)).

## Count IX – Official Oppression (Tex. Penal Code § 39.03)

34. Defendants, acting under color of office, intentionally subjected Plaintiff to unlawful mistreatment by abusing mental health reporting procedures to retaliate against protected speech.

## VI. DAMAGES

35. Plaintiff seeks:

- Compensatory damages for emotional distress, reputational injury, and loss of rights.

- Punitive damages against individual defendants.

- Declaratory and injunctive relief requiring removal of false 10-96 entries.

- Costs and attorney's fees under 42 U.S.C. § 1988.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in her favor, awarding damages, injunctive and declaratory relief, costs, attorney's fees, and such other relief as the Court deems just.

## VIII. Reservation of Right to Amend

Plaintiff expressly reserves the right to amend this Complaint as justice requires and as permitted by **Federal Rule of Civil Procedure 15(a)**, including but not limited to adding additional factual allegations, causes of action, and parties as may be warranted upon discovery of new evidence or information during the course of these proceedings.

**Respectfully submitted,**

**Deborah Swan**
Pro Se Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August 2025, I filed the foregoing **Second Amended Complaint** with the Clerk of the Court, and will send notification of such filing to all counsel of record.

I further certify that a true and correct copy of the foregoing document has been served to the listed defendants via **email** to the following:

Daniel Plake
Assistant County Attorney
Montgomery County Attorney's Office
501 North Thompson, Suite 300
Conroe, Texas 77301
Attorney for Defendants Shields, Atkins, and Montgomery County