UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Deborah Swan,
 Plaintiff,

v.

Deputy Walter Shields, et al.,
**MONTGOMERY COUNTY CONSTABLES PCT 3**
Defendants.

Civil Action No. 4:25-cv-02799

**JUDICIAL NOTICE OF DEFENDANTS MONTGOMERY COUNTY
CONSTABLES PCT 3 MISUSE OF TEXAS PUBLIC INFORMATION ACT
EXEMPTIONS TO CONCEAL WELFARE CHECK RECORDS**

I. INTRODUCTION

Plaintiff respectfully submits this Judicial Notice pursuant to Federal Rule of

Evidence 201. The attached evidence demonstrates that Montgomery County,

through its County Attorney's Office, has improperly invoked exemptions under

the Texas Public Information Act ("PIA"), Tex. Gov't Code ch. 552, to withhold

non-criminal welfare check records. The County's reliance on § 552.103 (litigation

exception) and § 552.108 (law-enforcement exception) misapplies the statute and

conceals potential fabrication of official reports by the Montgomery County

Constable's Office, Precinct 3.

## II. BACKGROUND

A. On September 4, 2025, deputies from Montgomery County Constable Precinct 3 conducted a courtesy welfare check at Plaintiff's residence. The constables stated a friend of Plaintiff had not heard from Plaintiff and asked for someone to ask the Plaintiff to contact Karina Pearce. The encounter lasted only minutes, was friendly and cordial.

B. Plaintiff subsequently requested from the Sheriff Office the related 911/non-emergency call audio and bodycam footage. The County Attorney's Office denied release, citing Tex. Gov't Code §§ 552.103 and 552.108.

C. In a recorded conversation with Assistant County Attorney Reba George, Plaintiff was informed that, although "no crime occurred" and "nothing came of it," the County considered the welfare check an "investigation" sufficient to trigger § 552.108, and further argued that pending litigation justified withholding under § 552.103.

D. Plaintiff has attached:

   a. Exhibit A – Transcript of call with Assistant County Attorney Reba George (Sept. 2025).

   b. Exhibit B – Transcript of Welfare Check recording made by Plaintiff.

   c. Exhibit B-1 – Audio recording of Welfare Check (digital media).

## III. COUNTY ATTORNEY'S POSITION

During the call, Assistant County Attorney Reba George stated:

> *"The statute says if nobody was convicted of a crime and nobody received deferred adjudication, then there's this exception that we can raise to withhold the law-enforcement records... In this case, I'm arguing both. I'm arguing that it relates to litigation ... and in addition to that, there was no conviction or deferred adjudication."*

She further claimed that a welfare check constitutes an "investigation" covered by § 552.108, despite admitting that no criminal offense occurred.

## IV. STATUTORY FRAMEWORK

Tex. Gov't Code § 552.108(a)(2):

> "Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from [public disclosure] if ... it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication."

(emphasis added).

The statute explicitly limits the exemption to investigations of crime. A welfare check is not a criminal investigation.

## V. CASE LAW

1. Houston Chronicle Publ'g Co. v. City of Houston, 531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

*Even where § 552.108 applies, "basic information" (time, date, location, complainant, and incident summary) must always be released.*

2. King v. Paxton, 576 S.W.3d 881 (Tex. App.—Austin 2019).

   Clarifies that § 552.108 applies only to *criminal* investigations, not to civil, regulatory, or welfare-check functions.

3. City of Fort Worth v. Cornyn, 86 S.W.3d 320 (Tex. App.—Austin 2002, no pet.).

   Holds that a governmental body bears the burden of proving how an exemption applies; conclusory assertions of "investigation" are insufficient.

## VI. MOTIVE FOR WITHHOLDING

The County Attorney's decision to invoke Tex. Gov't Code §§ 552.103 and 552.108 in this context, despite admitting that no criminal activity occurred, strongly suggests an improper motive. Several factors demonstrate why these records are being shielded:

1. **Protection of Constables from Scrutiny.**

   Plaintiff has already uncovered evidence of false reporting by Deputy Walter Shields, including improper use of the 10-96 "mental health/danger" code and politically biased notations. If the official welfare check records

contradict Plaintiff's personal recording of the event, it would expose further fabrication or misrepresentation. Withholding prevents such discrepancies from coming to light.

2. **Litigation Strategy.**

   By invoking § 552.103 (litigation exception), the County attempts to shift disclosure from the Public Information Act — which favors openness — to the federal discovery process, where the County can obstruct, delay, or narrow production. This tactic deprives Plaintiff of the timely and independent access to records that the PIA was designed to guarantee.

3. **Overbroad Interpretation of "Investigation."**

   The County interprets any law-enforcement response, even a welfare check, as an "investigation" under § 552.108, despite statutory language limiting the exemption to the "detection, investigation, or prosecution of crime." This reflexive withholding shields even routine, non-criminal encounters from public scrutiny.

4. **Avoidance of Embarrassment and Liability.**

   Plaintiff's welfare check recording (Exhibit B) contains admissions by deputies that no alerts existed on her name and that 10-96 codes are not used by their department. Public release of the official records could reveal

inconsistencies or politically retaliatory entries, reinforcing Plaintiff's claims.

### 5. Institutional Practice.

The County's approach reflects a "withhold-first" culture, invoking exemptions whenever possible regardless of merit. While this strategy minimizes risk for the County, it contravenes the PIA's directive that the law be liberally construed in favor of transparency. Tex. Gov't Code § 552.001.

## VII. REQUEST FOR JUDICIAL NOTICE

Plaintiff respectfully requests the Court take judicial notice that:

1. Montgomery County improperly invoked §§ 552.103 and 552.108 to block disclosure of a welfare check record that was non-criminal in nature.

2. The Attorney General's Office, through Assistant County Attorney Reba George, admitted no crime occurred yet still applied criminal-investigation exemptions.

3. Plaintiff's own audio and transcript (Exhibit B, B-1) prove the welfare check was purely non-criminal.

## VIII. CONCLUSION

The Court should take judicial notice of Exhibits A and B, recognize the misapplication of §§ 552.103 and 552.108, and weigh this evidence in assessing Defendants' credibility and Plaintiff's claims of false reporting and retaliation.

Respectfully submitted,

Deborah Swan
Plaintiff, Pro Se

## TABLE OF AUTHORITIES

Statutes

A. Tex. Gov't Code § 552.001 – Liberal construction in favor of disclosure.

B. Tex. Gov't Code § 552.103 – Litigation exception.

C. Tex. Gov't Code § 552.108(a)(2) – Criminal investigation exception.

Cases

D. Houston Chronicle Publ'g Co. v. City of Houston,
531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

E. King v. Paxton,
576 S.W.3d 881 (Tex. App.—Austin 2019).

F. City of Fort Worth v. Cornyn,
86 S.W.3d 320 (Tex. App.—Austin 2002, no pet.).

# EXHIBIT A

From: SWAN

To: (936.539-7828) Reba George, Montgomery County Attorney's Office

September 17, 2025

Notes: Transcription prepared from source text supplied by client. Bracketed material [like this] are clarifications. Repetitions/fillers reduced for clarity, but the substance of the conversation is preserved.

SWAN: Hi, I'm calling to speak with Rebecca George.

REBA GEORGE: You do not have a Rebecca George in this office.

SWAN: Oh, I'm sorry — I just missed, didn't have my glasses on. I meant Reba George. Is she available?

REBA GEORGE: Yes, that's correct. Reba George. I can transfer you, one second.

SWAN: Thank you. I believe you're the author of the letter to the Attorney General's Office in reference. I'm just trying to understand — I see that you are requesting an exemption not to release records. Could you explain to me why? This welfare check wasn't any kind of investigation; it was presented as just a welfare check.

REBA GEORGE: Right. Just like last time, it's not a criminal investigation. The investigation is just an "investigation." They came out to check — that's an

investigation. It's not criminal, it's not civil, just an investigation. I'm not saying there was criminal activity, I'm not arguing there was a criminal offense. I'm just saying there was an investigation, and in fact, no charges came out of it. No one was convicted, no one got probation, there was no deferred adjudication — nothing came of it.

SWAN: So that's one argument. But then there's also my pending lawsuit in the Southern District, and you're saying these records relate to that litigation?

REBA GEORGE: Yes.

SWAN: I don't understand how that relates to my litigation. The constables told me a friend called in a welfare check. I just want to verify that call actually took place. If it did, there should be no issue with letting me hear it, and then it wouldn't even be part of the lawsuit.

REBA GEORGE: The allegations made in the call detail report relate to your lawsuit, and therefore we raise that exception.

SWAN: I understand your position, but I hope you can understand mine. They just showed up out of the blue. Everything was fine, they were here maybe seven minutes, but since last year (June 7th) I uncovered false information and a false profile labeling me "10-96 danger" by Constable Shields. I just want to verify that it's not happening again.

REBA GEORGE: It's not the Sheriff's Office that responded to you, it's the Constable's Office. Anything after they came and checked on you would be in their records. The Sheriff's Office only has the 911 call and CAD detail.

SWAN: So if I want the body cam or follow-up, I have to request it from the Constable's Office?

REBA GEORGE: Yes.

SWAN: And their records should match what the Sheriff's Office has? Same centralized dispatch database?

REBA GEORGE: I don't know the details of dispatch. I just process records; I'm the middleman.

SWAN: Understood. I originally requested from the Sheriff's Office — audio of the call and body cam. They told me you got involved and refused release. I just want to confirm everything was documented honestly.

REBA GEORGE: The Constable's Office would have the body cam. The Sheriff's Office only has the call.

SWAN: So you're filing the exemption because of my lawsuit, not because you consider it a criminal investigation?

REBA GEORGE: I'm arguing both: (1) it relates to pending litigation, and (2) because this is not a criminal investigation, nothing came of it, so only "basic" information would be released. Under Government Code § 552.103 we can withhold records that relate to litigation.

SWAN: But § 552.108 talks about "detection, investigation, or prosecution of crime." A welfare check doesn't fit. Nobody was arrested, convicted, or on probation. Why is that exemption being applied?

REBA GEORGE: That's your interpretation. I'm telling you the statute allows us to assert the exemption. If it relates to litigation, you'll have to pursue discovery, not Public Information Act.

SWAN: That's exactly my concern. What if a constable files a false report? I experienced that already with Deputy Shields. This exemption keeps me from verifying whether it's happening again. Do you see my problem?

REBA GEORGE: I understand. But the Attorney General decides whether the exemption applies. If they agree with us, the records are withheld. If they disagree, they order release.

SWAN: So as a citizen, I'm left with no remedy if the constable is dishonest. That's very concerning. Where do I go for help?

REBA GEORGE: I don't know. You can appeal the AG's ruling, or pursue discovery in your lawsuit.

SWAN: I appreciate your time. I just don't agree with your office's application of the law. A welfare check should not be treated like a criminal investigation. I have my own recording of the encounter, so I can prove what happened that day. I hope you can understand my position.

REBA GEORGE: I do understand, but this is what the statute says.

SWAN: Thank you. Goodbye.

REBA GEORGE: Goodbye.

## CERTIFICATION

I, Deborah Swan , hereby certify that the foregoing is a true and accurate transcription of the audio/video recording provided by Plaintiff, to the best of my ability.

## EXHIBIT B

## TRANSCRIPT OF SEPTEMBER 4. 2025, WELFARE CHECK INTERACTION

**Participants:**

**Deputy 1** (Montgomery County Constable's Office)

**Deputy 2** (Montgomery County Constable's Office)

**Deborah Swan** (Plaintiff)

**Deputy 1:** A former roommate, Carrie, contacted us. She just wanted us to come check on you.

**Plaintiff:** Oh, really? OK. I haven't talked to her in a long time. She used to live here with my ex-roommate, but she moved out about two years ago. We weren't close friends.

**Deputy 1:** She said she hasn't heard from you in about a month.

**Plaintiff:** That's odd. Did she leave a number for me to call her?

**Deputy 1:** She called from her old Arkansas number.

**Plaintiff:** That makes sense. I'll follow up with her. But there's no reason for three deputies to come over here — it makes me look bad in front of my neighbors.

**Deputy 2:** We just wanted to check that you're OK. You seem fine.

**Plaintiff:** I am. But let me ask you something — are you aware that I have a pending lawsuit against this precinct? One of your deputies, Shields, has flagged my address with a "caution alert." He admitted in court records that he profiled me. Do you see anything on your system?

**Deputy 1:** No, I didn't see anything in the dispatch notes except that a friend requested a welfare check.

**Plaintiff:** Hopefully it's been removed. How often do you use a 10-96 code against citizens? Do you know what that means?

**Deputy 2:** We don't really use 10-codes anymore. Some old-school departments still do, but not us.

**Plaintiff:** Captain Atkins told me he uses it all the time. It concerns me because Shields used 10-96 to flag me as mentally unstable, and he mocked me for supporting Donald Trump. That's political profiling.

**Deputy 1:** I don't know anything about that.

**Plaintiff:** Who regulates your office? Who do you answer to if there's misconduct?

**Deputy 2:** The Constable is the elected official in charge. Like the Sheriff, he's the department head. You can reach out to him directly.

**Plaintiff:** That's one person I haven't spoken to. Good to know. Shields has told deputies to report back to him about any interactions with me. Do you record this interaction?

**Deputy 1:** Yes, it's our policy to record.

**Plaintiff:** Good — I want everything recorded. Thank you for the information. I'll follow up with Carrie.

## CERTIFICATION

I, Deborah Swan , hereby certify that the foregoing is a true and accurate transcription of the audio/video recording provided by Plaintiff, to the best of my ability.

**Deborah Swan**
Pro Se Plaintiff
1318 Chesterpoint Drive
Spring, Texas 77386
justiceguard@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2025, a true and correct copy of the foregoing Defendants Have Waived Objections to Claims Against the Constable's Office was served upon the following parties by electronic filing via CM/ECF and/or email:

Daniel Plake
Assistant District Attorney
Montgomery County Attorney's
Office Email: daniel.plake@mctx.org
Attorney for Defendant Deputy W. Shields


/s/ Deborah Swan Pro Se Plaintiff
1318 Chesterpoint Drive Spring, TX 77386
justiceguard@proton.me