IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBORAH SWAN,
*Plaintiff,*

v.

DEPUTY W. SHIELDS, Individually and in his Official Capacity, and
MONTGOMERY COUNTY, TEXAS,
*Defendants.*

Civil Action No. 4:25-cv-02799

# AFFIDAVIT OF DEBORAH SWAN

**Record Authentication and Context Regarding Montgomery County Mental-Health Oversight, Welfare-Check Abuse, and Retaliatory Conduct**

## I. Personal Background

1. My name is Deborah Swan. I am over 18 years of age, competent to testify, and make this affidavit from my own personal knowledge.

2. I am the Plaintiff in *Swan v. Shields et al and Montgomery County Constables Pct 3.*, U.S. District Court, Southern District of Texas, Case No. 4:25-cv-02799, in which I allege that Deputy Walter Shields and Montgomery County Constable Precinct 3, under the supervision of Captain Michael Atkins, violated my constitutional rights by falsely classifying me

United States Courts
Southern District of Texas
FILED
OCT 17 2025
Nathan Ochsner, Clerk of Court

as a "10-96 mental-health subject," disseminating defamatory information, and retaliating against me for protected speech.

3. This affidavit authenticates official Montgomery County public records and provides factual context connecting those records to events documented in my case filings, including Dkt. 7 (Defendants' Motion to Dismiss), Dkt. 10 (Response in Opposition), and Dkt. 24.

## II. Personal Events and County Conduct

4. On June 7, 2024, I was subjected to a false welfare check performed by Deputy Holman of Constable Precinct 3. Audio evidence and dispatch logs confirm that this was a false welfare check that was initiated by Deputy Shields and the HOA president, Cynthia Griffin. The false report made by Griffin and Shields was after I attempted to file a criminal report about Griffin's address located at 1326 Castlemist Drive, and the HOA office located at 1323 Jander Drive, accessing my private email account hundreds of times over a 2 year period. The HOA parking lot is a location where Shields oftern parked his SUV. Deputy Vera refused to draft as report and did not conduct any investigation; he only instructed me to change my password. After his refusal the logging activity increased double the amount so i delivered a one page letter to Cynthis Griffin. Immediately after

delivering this letter all activity stopped. Deputy Shields was not present yet later on the same day entered a false 10-96 code and notation labeling me "politically delusional." No legal authority, mental-health evaluation or probable-cause of self harm basis existed. (Referenced in Dkt. 24, Ex. A.)

5. On June 12, 2024, Captain Atkins subsequently admitted, in recorded phone calls, that (a) the department had no policy for removing false mental-health codes, (b) such codes were based on "opinion," and (c) the County Attorney's Office was aware of these practices. (Referenced in Dkt. 24, Ex. B.)

6. This profiling occurred during a period when Montgomery County was expanding ARPA-funded mental-health enforcement and crisis-response initiatives, as shown in official Commissioners Court records authenticated below.

### Threat by Assistant County Attorney Daniel Plake

7. During the pre-discovery conference in *Swan v. Shields and Montgomery County Constables Pct 3*, Assistant County Attorney Daniel Plake, counsel of record for both Deputy Shields and Montgomery County, made a threatening statement to me. When I asked whom he planned to depose, Mr. Plake said he would "speak with Karina Pearce, who is not a close friend,

but has connections with community groups and my ex roommate who also is involved, and the five neighbors I delivered letters to about my email interceptions, and that he would take their statements to a judge to obtain an order for a mental evaluation. I have no mental-health history and have never been evaluated or treated for any mental illness. I reasonably understood this to be an attempt to intimidate me for suing his client for defamation and civil-rights violations. (Referenced in Dkt. 24 ¶¶ 28-31.)

**Pearce-Initiated Welfare Check and Records Concealment**

8. On or about September 9, 2025, deputies from Constable Precinct 3 appeared at my residence for another "welfare check." They stated that the call had been initiated by Ms. Karina Pearce, and acted as though they had been told Ms. Pearce and I were "close" and that she was "worried about me." I informed them that Ms. Pearce and I were not close, and that the characterization was inaccurate. Their conduct indicated that they had been briefed with false personal information, consistent with the continuing misuse of "mental-health" profiling described above.

9. I subsequently filed a Texas Public Information Act (PIA) request seeking the audio or written report of the Pearce-initiated call. Rather than release the record, the Constable's Office filed an exemption request with the Texas

Attorney General, effectively blocking disclosure, and filing it under a criminal investigation, the same way they did the June 2024, false welfare check. This concealment prevents me from verifying the calls and what statements were made. The refusal to release these records, fabricated letters to and from the Attorney General, combined with the County Attorney's earlier threat, demonstrates a coordinated pattern of fabricating a false mental-health history and then invoking statutory exemptions to prevent discovery.

## III. Public-Record Authentication

The following exhibits are true and correct copies of official Montgomery County Commissioners Court minutes retrieved from *mctx.org* (October 2025):

| No. | Date & Title | Excerpt (Page No.) | Relevance |
|---|---|---|---|
| 1 | Oct 24 2023 Minutes | "Request approved to create one (1) position – Mental Health Investigator (Grade 19)… funding from ARPA funds." (p. 17) | Establishes creation of ARPA-funded mental-health investigator position concurrent with my false 10-96 profiling. |

| | | | |
|---|---|---|---|
| 2 | Oct 24 2023 Minutes | "Contracts approved … Tri-County Behavioral Healthcare, Interfaith of The Woodlands, Yes to Youth, Meals on Wheels." (pp. 17–18) | Identifies behavioral-health vendor network within my residential area. |
| 3 | May 7 2024 Minutes | "First Amendment … Agreement for Management and Operations of the Montgomery County Mental Health Treatment Facility with Wellpath Recovery Solutions, LLC." (p. 11) | Confirms privatized mental-health facility management under County authority. |
| 4 | July 23 2024 Minutes | "Interlocal Cooperation Contract between Montgomery County and the Texas Health and Human Services Commission for the Mental Health Treatment Facility (HHS00135300001)." (p. 20) | Shows State HHSC contractual oversight of County mental-health operations. |
| 5 | Nov 19 2024 Minutes | "Agreement to accept FY 2025 Mental Health Grant award from H-GAC for Juvenile Probation Department ($15,000)." (pp. 16–17) | Proves continuing regional mental-health grant funding. |
| 6 | Apr 23 2024 Minutes | "Authorization for FY 2025 UASI and SHSP grant programs; Jason Millsaps designated as authorized official." (p. 14) | Links Department of Homeland Security grants to County crisis-response programs. |
| 7 | Oct 24 2023 Minutes | "Additional law-enforcement services in The Woodlands Township by Constable Precinct 3, subject to review by the County Attorney." (p. 17) | Confirms County Attorney oversight of Precinct 3 operations is the same office defending Shields. |

## IV. Analytical Context

11. These official records demonstrate that during 2023–2025, Montgomery County built a multi-agency mental-health infrastructure funded by federal (ARPA, UASI, SHSP) and state (HHSC) grants, while the County Attorney's Office simultaneously exercised approval authority over both law-enforcement contracts and behavioral-health agreements.

12. Mr. Plake's threat to seek a judicial mental-health order, the Pearce-initiated welfare check, and the refusal to release the corresponding records, occur within this same funding and authority structure. This shows a pattern in which mental-health enforcement mechanisms are used as tools of retaliation rather than legitimate public safety.

## V. Certification of Authenticity

13. Each record cited herein is an official Montgomery County public document that can be retrieved from *mctx.org* or filed within the federal docket referenced above.

14. All statements based on personal experience are true and correct and supported by contemporaneous recordings, transcripts, and correspondence maintained in this record and in my evidentiary files.

*Deborah Kay Swan*

Deborah Swan, Affiant

State of Pennsylvania, County of Beaver

Subscribed and sworn before me on this 17th day of October 2025, by Deborah Swan, who is personally known to me or produced identification and acknowledged that she executed this affidavit for the purposes and considerations stated herein.

*Michael P Webb*

Commonwealth of Pennsylvania - Notary Seal
MICHAEL J WEBB, Notary Public
Allegheny County
My commission expires November 8, 2025
Commission Number 1290457

Notarized remotely online using communication technology via Proof.