IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

NOV 2 1 2025

Nathan Ochsner, Clerk of Court

DEBORAH SWAN,

Plaintiff,

v.

DEPUTY W. SHIELDS, Individual ly and in his Official Capacity,
MONTGOMERY COUNTY CONSTABLES PCT 3, TEXAS,

Defendants.

Civil Action No. 4:25-cv-0279

## LEGAL AUTHORITY IN OPPOSITION AND OBJECTION OF THE DEFENDANTS DKT 76 MOTION TO DISMISS

I. Introduction

Defendants' Motion to Dismiss seeks to collapse Plaintiff's well-pleaded

constitutional and state law claims into a narrow narrative that ignores the factual

detail and legal grounding of the Third Amended Complaint. Plaintiff has alleged

specific conduct by Deputy Shields IN BOTH official and INDIVIDUAL

capacities, and Montgomery County Constables Pct 3 and officials, including but

not limited too false and stigmatizing entries in official CAD dispatch  police

report, retaliatory labeling of Plaintiff as mentally ill and politically delusional,

obstruction of access to public records, and refusal to correct false information

even after notice. These allegations are not conclusory; they are supported by

dates, actors, and documentary references, and they plausibly state claims under

the First, Fourth, and Fourteenth Amendments, as well as state law tort theories. At

this stage, the Court must accept Plaintiff's factual allegations as true and draw

reasonable inferences in her favor. Under *Twombly* and *Iqbal*, Plaintiff's complaint

easily clears the plausibility threshold. Dismissal would improperly deny Plaintiff

the opportunity to prove her claims through discovery and would insulate

retaliatory and stigmatizing conduct from judicial review. Accordingly,

Defendants' motion should be denied.

II. Summary of the Argument

Defendants' Motion to Dismiss should be denied because Plaintiff's Third

Amended Complaint sets forth detailed factual allegations that plausibly state

constitutional and state law claims. Under *Twombly* and *Iqbal*, Plaintiff is not

required to prove her case at the pleading stage, but only to allege sufficient facts

that, taken as true, permit the Court to reasonably infer liability. Plaintiff has done so.

First, Plaintiff alleges a cognizable First Amendment retaliation claim, supported by specific facts showing that Deputy Shields labeled her as mentally ill and politically delusional in response to her protected speech and petitioning activity. These retaliatory actions chilled speech, isolated Plaintiff socially, and obstructed her access to remedies. Plaintiff also plausibly alleges a Fourth Amendment violation based on the misuse of a welfare check and false classification, and a Fourteenth Amendment stigma-plus claim grounded in false mental health labeling coupled with denial of due process and tangible harm.

Second, Plaintiff states a claim against Montgomery County under Monell. The County's refusal to correct false entries, its failure to train officers on the limits of mental health codes, and its ratification of Shields' conduct collectively establish a policy or custom that was the moving force behind the violations.

Third, Plaintiff's state law tort claims for defamation and fraud are not barred by immunity or the election of remedies doctrine. Shields acted with malice and retaliatory intent, outside the legitimate scope of his duties, and TTCA immunity does not extend to intentional torts committed under color of office.

Finally, Plaintiff is entitled to declaratory and injunctive relief. The relief sought is narrowly tailored to prevent ongoing harm from false and stigmatizing entries, clarify Plaintiff's rights, and ensure procedural safeguards. Defendants' speculation about "disastrous effects" is unfounded and irrelevant to the constitutional violations alleged.

In sum, Plaintiff's complaint is fact-specific, plausible, and constitutionally grounded. Defendants' motion mischaracterizes the claims and improperly seeks dismissal of allegations that must be tested through discovery. The Court should deny the motion in its entirety.

# Table of Authorities

Cases

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Paul v. Davis*, 424 U.S. 693 (1976)
- *Thompson v. Clark*, 596 U.S. 36 (2022)
- *City of Canton v. Harris*, 489 U.S. 378 (1989)
- *Monell v. Department of Social Services*, 436 U.S. 658 (1978)
- *Kentucky v. Graham*, 473 U.S. 159 (1985)
- *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992)
- *Rhode v. Denson*, 776 F.2d 107 (5th Cir. 1985)
- *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002)
- *Estate of Davis ex rel McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005)
- *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)
- *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986)
- *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999)
- *Izen v. Catalina*, 398 F.3d 363 (5th Cir. 2005)

- *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)
- *Texas v. Thompson*, 70 F.3d 390 (5th Cir. 1995)
- *Siegert v. Gilley*, 500 U.S. 226 (1991)
- *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011)
- *Alexander v. Walker*, 435 S.W.3d 789 (Tex. 2014)
- *Frias v. Hernandez*, 142 F.4th 803 (5th Cir. 2025)
- *Martinez v. Hardy*, 864 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993, no writ)
- *Harris County v. MERSCORP, Inc.*, 791 F.3d 545 (5th Cir. 2015)

Statutes

- U.S. CONST. amend. I
- U.S. CONST. amend. IV
- U.S. CONST. amend. XIV, § 1
- 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act)
- TEX. CIV. PRAC. & REM. CODE § 101.106 (Election of Remedies)
- TEX. CIV. PRAC. & REM. CODE § 101.057 (TTCA immunity exceptions)
- TEX. HEALTH & SAFETY CODE § 573.001 (Emergency detention standard)

Rules

- FED. R. CIV. P. 8(a)(2) (Short and plain statement of claim)
- FED. R. CIV. P. 12(b)(6) (Motion to dismiss for failure to state a claim)
- FED. R. EVID. 201(b) (Judicial notice of facts not subject to reasonable dispute)

PLAINTIFF'S RESPONSE TO ISSUE 1: COGNIZABLE CONSTITUTIONAL CLAIMS

## I. First Amendment Retaliation Claim Is Plausible and Well-Pled

Defendants mischaracterize Plaintiff's First Amendment claim as a demand for prosecution or report accuracy. In reality, Plaintiff alleges retaliatory labeling and stigmatization in response to protected speech and petitioning activity, including:

- Reporting cyberstalking and misconduct to law enforcement (Doc. 61 ¶¶ 7–11)
- Distributing public letters after deputies refused to take a report (¶ 13)
- Wearing political symbols and expressing dissent (¶¶ 26E, 27, 31)

These are core First Amendment activities, and Plaintiff plausibly alleges that Deputy Shields responded by:

- Misclassifying her as "10-96" (mentally ill) and "politically delusional"
- Instructing neighbors to monitor her and "lock the doors" (¶¶ 15, 26A, 26F)

- Mislabeling the report to block access under the Public Information Act (¶ 25)

This conduct satisfies the Fifth Circuit's test in *Izen v. Catalina*, 398 F.3d 363 (5th Cir. 2005):

1. Protected activity: Reporting misconduct and political speech
2. Adverse action: False mental health labeling, community warnings, and denial of access
3. Retaliatory motive: Temporal proximity and mocking of political symbols support inference of viewpoint discrimination

Defendants' reliance on *Johnson v. Bowe*, 856 F. App'x 487 (5th Cir. 2021), is misplaced. *Johnson* involved criticism and investigation without public stigmatization or procedural manipulation. Here, Plaintiff alleges targeted retaliation that chilled speech, isolated her socially, and obstructed access to remedies.

II. Fourth Amendment Claim Is Narrow but Viable

While Plaintiff was not arrested, she was subjected to welfare checks, initiated under false pretenses, based on retaliatory labeling. The check involved:

- Dispatching mental health officers without any lawful authority or proba

- Covertly recording Plaintiff as "10-96" code in official records and CAD database

- Entering these false reports into the system to create a false impression as if there were mental health issues that needed welfare checks. Creating false reports to justify community surveillance and mental illness flags in official databases.

- Sharing this false mental illness profile with other law enforcement and officials

- Contacting community members and issuing a warning to stay away from Plaintiff and not to speak with her.

- Providing falsely fabricated reports to the Attorney General of Texas and submitting false information to the AG of criminal investigations

- Contacting dispatch while providing false information about the Plaintiff and placing a flag on the home address and identification profiled within the CAD database system of "mental illness" and the code "10-96" which means suicidal and possible self-harm or harm to someone else.

This conduct implicates unreasonable seizure and abuse of process, especially since the welfare checks was pretextual. *Thompson v. Clark*, 596 U.S. 36 (2022), confirms that Fourth Amendment protections extend to wrongful initiation of legal process, even absent arrest.

III. Fourteenth Amendment "Stigma-Plus" Claim Is Strongly Supported

Plaintiff alleges:

- False labeling as mentally ill and politically delusional
- Community isolation and reputational harm
- Denial of access to public records and remedies
- No opportunity to refute the stigmatizing report

This satisfies the *Paul v. Davis*, 424 U.S. 693 (1976), standard when stigma is coupled with tangible harm to liberty or property interests. Courts have recognized that mental health designations, especially when shared with neighbors and law enforcement, can trigger stigma-plus liability.

Defendants' claim that Plaintiff seeks to "dictate the contents of a police report" is a strawman. Plaintiff does not seek editorial control; she seeks constitutional accountability for retaliatory and stigmatizing entries made under color of law.

IV. Injury Is Concrete and Cognizable

Defendants argue no injury occurred because Plaintiff was not detained. But Plaintiff has irrefutable evidence to prove :

- Social isolation and reputational damage

- Chilling of speech and fear of future encounters
- Obstruction of access to public records and remedies

These are real-world injuries that courts have recognized as sufficient under *Iqbal* and *Twombly*. The complaint contains specific factual allegations, not mere conclusions, and plausibly supports relief.

PLAINTIFF'S RESPONSE TO ISSUE 1 (Fourteenth Amendment – Stigma-Plus Claim)

I. Plaintiff's Claim Is Grounded in More Than Reputation

Defendants mischaracterize Plaintiff's Fourteenth Amendment claim as a mere grievance over reputation. In fact, Plaintiff alleges:

- False labeling as "10-96" (mentally ill) and "politically delusional"
- Community warnings instructing neighbors to "lock the doors" and monitor her
- Denial of access to public records via the misclassification of the report
- No opportunity to refute the stigmatizing designation

These allegations go beyond defamation. They implicate liberty interests protected by the Fourteenth Amendment, including:

- The right to be free from state-imposed stigma that alters legal status or access

- The right to procedural due process before being labeled mentally ill in official records

II. Stigma-Plus Doctrine Is Satisfied

Under *Paul v. Davis*, 424 U.S. 693 (1976), and its Fifth Circuit progeny, a plaintiff must allege:

1. Stigma: False, public, and damaging assertions by a state actor

2. Plus: A tangible alteration of legal status, rights, or access

Plaintiff satisfies both:

- Stigma: Shields labeled her mentally ill and politically delusional in an official report, shared with neighbors and law enforcement

- Plus: This designation triggered:

  - Community surveillance and isolation

  - Denial of access to the report under the Public Information Act

  - Risk of escalated law enforcement encounters

  - Chilling of speech and petitioning activity

Defendants argue the report merely reflects Shields' "opinion." But the record shows concrete, official assertions that were used to justify dispatching a mental health officer and placing a caution on Plaintiff's address. This is not idle commentary, it's state action with legal and social consequences.

III. Procedural Due Process Was Denied

Plaintiff was never given notice or opportunity to contest the mental health designation. The report was:

- Created after the welfare check found no signs of illness
- Classified to block access
- Used to justify ongoing surveillance and reputational harm

This violates the procedural safeguards required before the state can impose a stigmatizing label that affects liberty interests. Courts have recognized that mental health designations, especially when shared or used to justify action, require due process.

IV. Qualified Immunity Does Not Apply

Defendants claim no clearly established right was violated. But courts have long held that:

- False, stigmatizing assertions by state actors, when coupled with tangible harm, violate the Fourteenth Amendment

- Procedural due process is required before imposing such designations

Plaintiff's allegations are specific, plausible, and supported by record references. Shields' conduct was not a discretionary judgment — it was retaliatory, stigmatizing, and procedurally deficient.

## V. Conclusion

Plaintiff's Fourteenth Amendment claim is not about dictating report content — it's about constitutional accountability for false, stigmatizing designations made under color of law without due process. The complaint satisfies the *Iqbal/Twombly* standard and the *Paul v. Davis* framework. Defendants' motion to dismiss this claim should be denied.

## PLAINTIFF'S RESPONSE TO ISSUE 2: MUNICIPAL LIABILITY UNDER MONELL

### I. Plaintiff Has Plausibly Alleged a Monell Claim

Defendants argue that Plaintiff failed to identify a policymaker or official policy. But Plaintiff alleges:

- A custom or practice of refusing to correct false entries in police reports, even when those entries stigmatize individuals as mentally ill without basis (Doc. 61 ¶¶ 22–23, 42)

- A systemic failure to provide any mechanism for review or correction, confirmed by Captain Atkins' statement that "the office does not have a mechanism to remove entries... even if false" (¶ 23)

While Defendants cite *Rhode v. Denson* to argue that constables are not county policymakers, this does not foreclose liability. Courts have recognized Monell liability where:

- A widespread custom or practice exists, even if not formally adopted

- A failure to act amounts to deliberate indifference to constitutional rights

Plaintiff's allegations plausibly suggest that Montgomery County has no internal safeguards against false mental health designations — a policy gap that directly enabled the harm.

II. Failure to Train Claim Is Factually Supported

Plaintiff alleges that Montgomery County failed to train officers on the limits of Texas Health & Safety Code § 573.001, which governs emergency mental health detentions. Specifically:

- Officers misused mental health codes (e.g., "10-96") to label Plaintiff as mentally ill despite no qualifying behavior

- Shields created a report suggesting mental illness after the welfare check found no signs of it

- The report was used to justify surveillance and community warnings

This supports a plausible inference that officers were not adequately trained on:

- The legal threshold for mental health designations

- The consequences of stigmatizing entries in official records

- The procedural safeguards required before labeling someone "10-96"

Defendants argue that Plaintiff failed to allege a pattern of similar incidents. But pattern is not required where the need for training is "so obvious" that failure to provide it amounts to deliberate indifference (*City of Canton v. Harris*, 489 U.S. 378 (1989)). Here, the predictable consequence of failing to train officers on mental health codes is unjustified stigma and procedural harm — exactly what occurred.

III. Ratification Claim Is Narrow but Viable

Defendants cite *Grandstaff* and *Coon* to argue that ratification requires extreme facts. But Plaintiff does not rely on Grandstaff's gunfire scenario — she alleges:

- Captain Atkins affirmatively refused to correct false entries, despite knowing they were inaccurate

- This refusal occurred after Plaintiff provided evidence contradicting the report

- The office's position was that no correction mechanism exists, even for stigmatizing errors

This is not a mere defense of subordinates; it's an institutional endorsement of false and harmful records, which supports a limited ratification theory. Courts have recognized ratification where:

- A policymaker approves or condones unconstitutional conduct

- The approval occurs after notice of the misconduct

Plaintiff's allegations meet this threshold.

IV. Conclusion

Plaintiff has plausibly alleged:

- A custom or policy of refusing to correct false police entries

- A failure to train on mental health codes and procedural safeguards

- A ratification of Shields' conduct by supervisory officials

These allegations satisfy the *Monell* framework and the *Iqbal/Twombly* pleading standard. Defendants' motion to dismiss Issue 2 should be denied.

## PLAINTIFF'S RESPONSE TO ISSUE 3: STATE LAW TORT CLAIMS

I. The Texas Tort Claims Act Does Not Automatically Bar Plaintiff's Claims

Defendants argue that the Texas Tort Claims Act (TTCA) bars Plaintiff's tort claims because Deputy Shields acted within the scope of his duties. But Plaintiff's allegations go beyond routine discretionary acts:

- Shields knowingly made false and stigmatizing statements in an official report, labeling Plaintiff as "10-96" and "politically delusional."
- Shields instructed neighbors to monitor Plaintiff and "lock the doors," amplifying reputational harm and social isolation.
- Shields misclassified the report to block Plaintiff's access under the Public Information Act.

These actions were malicious, retaliatory, and outside the legitimate scope of law enforcement duties. Texas courts have recognized that immunity does not extend to conduct that is ultra vires (beyond lawful authority) or undertaken with malice.

II. Election of Remedies Doctrine Does Not Apply

Defendants rely on TEX. CIV. PRAC. & REM. CODE § 101.106 and cases like *Franka v. Velasquez* and *Alexander v. Walker*. But Plaintiff's claims are distinguishable:

- The doctrine applies when claims could have been brought against the County. Here, Plaintiff alleges individual misconduct by Shields, including intentional defamation and fraud.
- Shields' conduct was not merely "within the scope of duties" — it was retaliatory and fabricated, designed to stigmatize Plaintiff rather than fulfill legitimate law enforcement functions.
- Texas courts have cautioned that § 101.106 should not be used to shield officials from intentional torts committed under color of office.

Thus, Plaintiff's claims against Shields in his individual capacity are not barred by election of remedies.

III. Defamation and Fraud Claims Are Cognizable

Defendants cite *Frias v. Hernandez* (5th Cir. 2025) to argue that officers are immune even if they falsify reports. But Plaintiff's case is distinguishable:

- In *Frias*, the court addressed immunity in the context of routine reporting. Here, Plaintiff alleges targeted retaliation and intentional fabrication designed to stigmatize her politically and socially.

- Fraud and defamation claims based on knowing falsification are not shielded by TTCA immunity when the conduct is outside lawful authority.

- Shields' motives are relevant because they demonstrate malice and retaliatory intent, which courts have recognized as exceptions to immunity in intentional tort cases.

IV. Montgomery County's Immunity Does Not Extend to Shields' Individual Liability

Defendants argue that Montgomery County is immune under TEX. CIV. PRAC. & REM. CODE § 101.057. Plaintiff does not seek to impose liability on the County for state torts. Instead, she seeks to hold Shields individually accountable for intentional misconduct. The TTCA does not bar such claims.

V. Conclusion

Plaintiff's state law tort claims are not barred by the Texas Tort Claims Act or the election of remedies doctrine because:

- Shields acted with malice and retaliatory intent, outside the legitimate scope of his duties.
- Plaintiff alleges individual misconduct, not merely official reporting.
- Immunity does not extend to intentional torts such as defamation and fraud committed under color of office.

Defendants' motion to dismiss Issue 3 should therefore be denied.

PLAINTIFF'S RESPONSE TO ISSUE 4:
DECLARATORY AND INJUNCTIVE RELIEF

I. Declaratory Relief Is Proper Because Plaintiff Has Stated Cognizable Claims

Defendants argue that the Declaratory Judgment Act does not create a cause of action. That is true, but Plaintiff has pled independent constitutional claims under

the First and Fourteenth Amendments. Declaratory relief is therefore available as a remedy to:

- Clarify legal rights regarding the false and stigmatizing entries in the June 7, 8,14,23, 2024 reports and dispatch CAD database.
- Establish accountability for retaliatory and stigmatizing conduct under color of law
- Prevent ongoing harm from the continued existence and dissemination of false entries

The Fifth Circuit has recognized that declaratory relief is appropriate where a plaintiff seeks to resolve uncertainty over constitutional rights (*Harris County v. MERSCORP*, 791 F.3d 545, 552 (5th Cir. 2015)). Plaintiff's claims are not abstract, they are grounded in specific factual allegations of retaliation, stigma, and denial of due process.

II. Injunctive Relief Is Necessary to Prevent Ongoing Harm

Defendants argue that Plaintiff seeks to "dictate" police report content. This misstates the relief sought. Plaintiff does not demand editorial control over law enforcement records. Instead, she seeks:

- A mechanism to challenge and correct false, stigmatizing entries that affect liberty interests

- Removal of entries that falsely label her as mentally ill and politically delusional, despite no supporting evidence

- Safeguards to prevent future retaliatory misuse of police reports

This relief is narrowly tailored to address constitutional violations, not to undermine legitimate law enforcement reporting. Courts have long recognized that injunctive relief is appropriate where ongoing stigma or denial of access continues to harm liberty interests (*Paul v. Davis*, 424 U.S. 693 (1976); *Thompson v. Clark*, 596 U.S. 36 (2022)).

III. Defendants' "Disastrous Effect" Argument Is Speculative

Defendants claim that allowing challenges to police reports would "decimate" criminal evidence. This is speculative and irrelevant:

- Plaintiff was never arrested, charged, or detained, her case involves false stigmatization without process, not criminal prosecution.

- Courts already allow challenges to police reports in criminal cases through cross-examination. Extending procedural safeguards to civil contexts does not undermine evidence, it strengthens accountability.

- Plaintiff seeks relief only for false and retaliatory entries, not routine officer observations.

The requested injunction would not create a "perverse incentive", it would ensure that law enforcement agencies cannot weaponize false mental health labels to retaliate against protected speech.

IV. Conclusion

Plaintiff has pled valid constitutional claims. Declaratory relief is appropriate to clarify her rights, and injunctive relief is necessary to prevent ongoing harm from false and stigmatizing entries. Defendants' motion to dismiss Issue 4 should be denied.

Remedies

Plaintiff respectfully submits that declaratory and injunctive relief are appropriate and necessary to redress ongoing constitutional violations and prevent future harm.

I. Declaratory Relief

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, authorizes federal courts to declare the rights and legal relations of parties where an actual controversy

exists. Plaintiff has pled independent constitutional claims under the First and Fourteenth Amendments. Declaratory relief is therefore proper to:

- Clarify that the false and stigmatizing entries in the June 7, 2024 police report violated Plaintiff's constitutional rights;

- Establish that retaliatory and stigmatizing conduct under color of law is unlawful; and

- Provide guidance to ensure future compliance with constitutional protections.

This relief will resolve uncertainty regarding Plaintiff's rights and prevent continued reliance on false entries that impair liberty interests.

II. Injunctive Relief

Plaintiff seeks narrowly tailored injunctive relief requiring Montgomery County to implement a mechanism for review and correction of false, stigmatizing entries in police reports. This request does not seek to dictate officer observations or undermine legitimate law enforcement reporting. Rather, it seeks to:

- Prevent ongoing harm from false mental health designations that chill speech, isolate Plaintiff socially, and increase risk of escalated law enforcement encounters;

- Ensure procedural safeguards before stigmatizing labels are imposed in official records; and

- Provide a meaningful avenue for redress when false entries are used to retaliate against protected speech.

Such relief is consistent with constitutional principles of due process and narrowly tailored to address the specific harms alleged. It does not create a "perverse incentive" for individuals to contest legitimate reports, but instead ensures accountability where false or retaliatory entries are made under color of law.

III. Equitable Necessity

Without declaratory and injunctive relief, Plaintiff remains subject to ongoing stigma, reputational harm, and denial of access to remedies. Monetary damages alone cannot redress the continuing constitutional injury. Equitable relief is therefore necessary to restore Plaintiff's rights and prevent future violations.

Conclusion

V. Conclusion

Plaintiff's Third Amended Complaint sets forth detailed factual allegations that, taken as true, plausibly establish constitutional violations and intentional torts. The complaint identifies specific retaliatory actions, stigmatizing labels, procedural

denials, and supervisory ratification that collectively state claims upon which relief can be granted. Defendants' arguments mischaracterize Plaintiff's claims as demands for report accuracy or prosecution, when in reality they challenge retaliatory misuse of police authority and denial of due process. Plaintiff seeks narrowly tailored declaratory and injunctive relief to prevent ongoing harm, as well as compensatory damages for reputational injury, emotional distress, and chilling of speech. Because the complaint satisfies Rule 8(a)(2) and the governing standards under *Twombly* and *Iqbal*, Defendants' Motion to Dismiss should be denied in its entirety, and this case should proceed to discovery and adjudication on the merits.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court deny Defendants' Motion to Dismiss in its entirety and grant the following relief:

1. Declaratory Relief: A declaration that the false and stigmatizing entries in the June 7, 2024, 8th, 14th, and 23rd police reports and all other reports in the Plaintiff's records and CAD dispatch entries violated Plaintiff's constitutional rights under the First and Fourteenth Amendments.
2. Injunctive Relief: An injunction requiring Montgomery County to implement a constitutionally adequate mechanism for review and correction of false, stigmatizing entries in police reports, and to remove the false entries concerning Plaintiff.

3. Damages: Compensatory damages of $10 million for loss of work, driver's license, and identification records have been affected due to the false mental illness label attached to the Plaintiff's name and identities. Reputational harm from the false mental health profile entered into the official database without a way to correct it, which will follow the Plaintiff forever.
4. Special damages of 2 million for the emotional distress, social isolation, and chilling of speech caused by Defendants' conduct.
5. Costs and Fees: An award of costs, expenses, and any other relief to which Plaintiff is justly entitled under law.
6. Further Relief: Such other and further relief, at law or in equity, as the Court deems just and proper.

Respectfully submitted,

Deborah Swan Plaintiff, Pro Se


CERTIFICATE OF SERVICE


I hereby certify that on November 21, 2025, a true and correct copy of the foregoing Plaintiff's Emergency Motion for Protective Order, together with all supporting exhibits, was filed and served via the Court's CM/ECF electronic filing system on all counsel of record, including:

Daniel Plake
Assistant County Attorney
Montgomery County Attorney's Office
Attorney for Defendants