**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **DEBORAH SWAN,** § | |
| § | |
| **Plaintiff,** § | |
| § | **CIVIL ACTION NO. 4:25-cv-2799** |
| **VS.** § | |
| § | |
| **DEPUTY WALTER SHIELDS,** *et al.*, § | |
| § | |
| **Defendants.** § | |

**MEMORANDUM AND ORDER**

This is a § 1983 suit arising from Plaintiff Deborah Swan's encounter with a Montgomery County police officer in the summer of 2024. Swan brings claims against Deputy Walter Shields in his individual and official capacities, the Montgomery County Constable's Office, and Montgomery County under 42 U.S.C. § 1983 for violations of her First, Fourth, and Fourteenth amendment rights. ECF No. 61. She also brings a § 1983 claim against Montgomery County under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) and various state tort claims against Deputy Shields. *Id.*

Before the Court is Defendants' Motion to Dismiss on behalf of Defendants Deputy Shields and Montgomery County.[1] For the reasons set forth below, the Court finds that the Motion to

---

[1] Swan maintains that Montgomery County has not answered or otherwise responded to this lawsuit. *See, e.g.*, ECF No. 93. But this is incorrect. Defendants' pending Motion to Dismiss was filed on behalf of both Deputy Shields in his individual capacity and Montgomery County. *See* ECF No. 76. The Motion states that it is filed on behalf of "Defendants Deputy Shields in his individual *and official capacities*." *Id*. at 1 (emphasis added). As Defendants correctly note, an action against Deputy Shields "in his official capacity" is an action against Montgomery County. *Id*. at 17; *see also Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 n.2 (5th Cir. 1992) ("The action

1

Dismiss should be **GRANTED**. The Court also dismisses Swan's claims against the Montgomery County Constable's Office because Plaintiff has not shown that the Constable's Office is a jural entity capable of being independently sued.

### I.    BACKGROUND

At this stage, the Court accepts the well-pleaded facts alleged in Swan's complaint as true, and views them in the light most favorable to Swan. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). When deciding a motion to dismiss, a court may also consider matters of public record. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). The Court may additionally consider documents attached to a motion to dismiss which are "are referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations omitted). Here, Deputy Shields attaches the incident report which he made summarizing the encounter with Swan and the 911 call that led to the encounter. ECF No. 76, Exh. B. Since this report is referenced in and central to Swan's complaint (and is also a matter of public record), the Court finds that it is appropriate to consider it. With those preliminary matters clarified, the Court will now summarize the relevant facts, as alleged in Swan's complaint.

---

against Sheriff Fields in his official capacity is an action against the County."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . the real party in interest is the entity."). The Motion addresses Swans' claims against both Defendants, including Swan's *Monell* claim, which is against Montgomery County only. There is no requirement that each defendant file its motion to dismiss as a standalone document. The case that Swan cites for this proposition, *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), "concerns the time within which a defendant named in a state-court action may remove the action to a federal court." *Murphy Bros.* 526 U.S. at 347. It does not contain a requirement that each defendant file a separate motion to dismiss.

In early 2024, Swan discovered that her email accounts were being accessed by unauthorized users. ECF No. 61 at 3. Swan refrained from changing her passwords in hopes of collecting evidence of the unauthorized activities. *Id*. Swan reported this activity to the Montgomery County Constable's Office and attempted to file a formal report, but the deputies who she spoke to elected not to open an investigation into the purported unlawful activity, instead advising Swan to change her password. *Id*. at 3-4.

Believing that the unauthorized access had originated within her neighborhood, Swan drafted a letter to her neighbors notifying them of the suspicious activity and her belief, and requesting that the unauthorized users cease accessing her email accounts. *Id*. at 4. She delivered these letters in her neighbors' mailboxes, after which the unauthorized access ceased.[2] *Id*.

One of Swan's neighbors called the police to report the letter they had received from Swan. ECF No. 76, Exh. B (Incident Report). As a result, Deputy Shields dispatched a mental health officer, Officer Holeman, to conduct a welfare check at Swan's residence on June 7, 2024. ECF No. 61 at 5. Swan describes the encounter between herself and Officer Holeman as "brief [and] non-confrontational" and notes that it lasted for fewer than ten minutes. *Id*. Officer Holman concluded that Swan did not meet the criteria for mental health detention, and Swan was not detained, arrested, or searched. *Id*.

After this encounter, Deputy Shields entered an internal report titled "Deputy Report for Incident." ECF No. 76, Exh. B ("incident report"). The report states that the 911 call was received by Deputy Shields, lists the responding officers as Shields and Holman, and lists Deputy Shields

---

[2] Swan also suggests that Deputy Shields and other law enforcement officers were responsible for the unauthorized access of her email accounts. ECF No. 61 at 4. But this allegation is not relevant to her causes of action and thus does not enter into the Court's analysis.

as the responsible officer. *Id*. It lists Swan as the suspect. *Id*. The name of the reportee is redacted. *Id*. In the report, Deputy Shields indicates that he spoke to the reportee, Swan's neighbor, regarding the letter Swan left in her neighbors' mailboxes. *Id*. Deputy Shields recognized Swan' name from a previous interaction and advised the neighbor to ignore the letter but call the police if Swan showed up at their home. *Id*. According to the report, Deputy Shields advised the neighbor that Swan "may have mental health issues" and that the police "would deal with the situation." *Id*. Deputy Shields then dispatched Officer Holman, the mental health officer, to Swans' home. *Id*.; ECF No. 61 at 5. Deputy Shields indicates in the report that Officer Holman "advised that [Swan was severely delusional and thought [D]emocrats were spying on her" but "did not find that an emergency detention order was warranted at the time of the interview."[3] ECF No. 76, Exh. B. Deputy Shields also entered a "10-96" radio code into the incident report. Both parties agree that this code refers to a "mental subject," "psychiatric subject," or "person with mental illness."[4] *See* ECF No. 9 (Request for Judicial Notice); ECF No. 76 at 12. Swan states that these entries were

---

[3] Swan alleges that this police report was fabricated after the fact because Deputy Shields "falsely listed himself as the responding officer and falsely characterized the welfare check as a criminal investigation." ECF No. 61 at 7. But the plain language of the report in question does not support this contention, nor does it conflict with Swan's description of the incident. At no point in the report does Deputy Shields purport to have been present for the interaction with Swan. Rather, he reports that he dispatched Officer Holeman, a mental health officer, to Swan's home. While for the purposes of resolving the motion to dismiss, the Court takes as true Swan's allegation that Deputy Shields' description of the interaction between Swan and Officer Holeman was not accurate, the report does not contradict Swan's contention that Officer Holeman, rather than Deputy Shields, was dispatched to Swan's residence. The reference to Deputy Shields as the "responding officer" refers to his response to the 911 call.

[4] Swan also alleges that this code means "dangerous/mentally ill." ECF No. 61 at 4. Although someone can be involuntarily detained for mental health reasons on the basis that they are a danger to themselves or others, Swan does not allege that this occurred in her case. Regardless, the exact meaning of 10-96 does not affect the Court's the analysis.

made "without any medical evaluation, lawful justification,[5] or firsthand observation," and conflicted with Officer Holman's finding that Swan did not meet the criteria for emergency mental health detention. ECF No. 61 at 5.

Swan obtained access to this report via a public information request. *Id*. She has never been diagnosed with mental illness and disputes the accuracy of the 10-96 characterization. *Id*. at 6. She submitted a formal complaint to the Montgomery County Constable's Office and requested that the 10-96 code and other false information be removed, but no action was taken. *Id*. Swan then requested additional records, which she revealed additional "false dispatch entries" that similarly contain the inaccurate 10-96 entry and "politically charged notations." *Id*.

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The motion to dismiss should not be

---

[5] Since whether the report was "lawful" is a legal conclusion rather than a factual allegation, it is not entitled to a presumption of truth at this stage. *See Iqbal*, 556 U.S. at 680 ("[the Court is] not bound to accept as true a legal conclusion couched as a factual allegation.").

5

granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Johnson*, 385 F.3d at 529.

### III.   ANALYSIS

Swan brings claims against Deputy Shields, the Montgomery County Constable's Office, and Montgomery County under 42 U.S.C. § 1983 for violations of her First, Fourth, and Fourteenth amendment rights. ECF No. 61. She also brings a *Monell* claim against Precinct 3 and Montgomery County, a state law defamation claim against Deputy Shields, and a claim of "fraud by fabrication of incident/dispatch reports" that mirrors the defamation claim. *Id*. Defendants argue that Swan fails to state a claim upon which relief can be granted as to all of her constitutional claims and her *Monell* claim. They also argue that Deputy Shields is entitled to qualified immunity. As to the state law claims, Defendants argue that Deputy Shields is immune from suit.

The Court under will analyze each of Swan's claims in turn, beginning with her constitutional claims.

### A.  Swan fails to state a claim under the First Amendment.

Swan contends that Deputy Shields' entry of the false 10-96 mental health code constituted retaliation on the basis of protected speech, namely, Swan's reports to the police and political views, in violation of the First Amendment. ECF No. 61, 31.Swan is correct that "the First Amendment prohibits. . . adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). But the alleged governmental conduct in this case—entry of an incorrect code in a police report—does not qualify as "adverse government action" for the purposes of a First Amendment retaliation claim.

Swan relies on *Izen v. Catalina*, 398 F.3d 363 (5th Cir. 2005) to argue that the government's conduct in this case constitutes an adverse action for the purpose of her unconstitutional retaliation claim.[6] *See* ECF No. 114 at 7. But *Izen v. Catalina* merely highlights the deficiency of Swan's allegations. In that case, the plaintiff, a tax attorney, was the subject of a multi-year criminal investigation which resulted in criminal charges. *Izen*, 398 F.3d at 367. The Court stated that "[s]ubjecting an attorney to criminal investigation and prosecution with the substantial motivation of dissuading him from associating with and representing clients opposing the IRS would violate the First Amendment." *Id*. Here, by contrast, Swan has not alleged that she was arrested, detained, or prosecuted. Rather, she argues that the entry of a police report falsely labeling her with the 10-96 code and describing her as "politically delusional" constituted an adverse government action for the purposes of her First Amendment claim. But a police report alone—even if false—does not constitute adverse government action that is actionable under the First Amendment. *Johnson v. Bowe*, 856 F. App'x 487, 493 (5th Cir. 2021) ("[Being] the victim of criticism, an investigation (or an attempt to start one), and false accusations" by police officers "are not actionable under our First Amendment retaliation jurisprudence."); *see also Colson v. Grohman*, 174 F.3d at 512 (same). Swan therefore fails to state a First Amendment claim.

**B.  Swan fails to state a claim under the Fourteenth Amendment.**

Next, Swan alleges that Defendants violated her Fourteenth Amendment right to due process when they entered the allegedly false 10-96 and "mentally ill" labels in the police report. ECF No. 61 at 35; 36. Specifically, Swan argues that this action violated due process by entering

---

[6] Swan also relies on *Thompson v. Clark*, 596 U.S. 36 (2022). *See* ECF No. 114 at 3. But that case dealt with a Fourth Amendment claim of malicious prosecution, not a First Amendment retaliation claim. *Thompson*, 596 U.S. at 39.

the 10-96 code without any formal process, notice, or opportunity to contest this designation. But because the entry of a code in a police incident report does not constitute a deprivation of life, liberty, or property, Swan's Fourteenth Amendment claim must be dismissed.

The due process clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Here, Swan contends that the "publication of stigmatizing false information in government databases imposed a material alteration of [Swan's] legal status, subjecting [her] to heightened law-enforcement danger protocols and loss of liberty interests without due process." ECF No. 61 at 35. In support of this claim, Swan relies on *Paul v. Davis*, 424 U.S. 693 (1976) and the so-called "stigma-plus" doctrine. But in fact, *Paul* demonstrates why Swan's Fourteenth Amendment claim must fail. In *Paul v. Davis*, the Supreme Court specifically held that "any harm or injury to [a person's reputation], even where. . . inflicted by an officer of the State, does *not* result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." *Paul*, 424 U.S. at 712 (emphasis added). In other words, the publication of false information by state officials, even if stigmatizing, does not constitute a violation of due process.

Swan attempts to evade dismissal by arguing that she suffered "a material alteration of. . . legal status" by virtue of the 10-96 entry in Deputy Shields' report. But this is a legal conclusion, rather than a factual allegation, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 680. *Paul v. Davis* is again instructive. In that case, the respondent argued that a city police department violated his due process rights when it inaccurately included his name and photograph on a public flyer captioned as "Active Shoplifters." *Paul*, 424 U.S. at 712. The Court concluded that the respondent had failed to allege a due process violation because police department's actions "d[id] not result in a deprivation of any 'liberty' or

8

'property' recognized by state or federal law, nor. . . worked any change of respondent's status as theretofore recognized under the State's laws." *Id*. If appearance on a publicized list of "active shoplifters" does not constitute a deprivation liberty or property under the Fourteenth Amendment, then the issuance of an internal police report labeling Swan with a mental health code certainly does not. Similarly, *Goss v. Lopez*, 419 U.S. 565 (1975), also cited by Swan, dealt with students' right to a due process prior to being suspended from public school. Unlike an allegedly false and stigmatizing police report, suspension from public school constitutes a material deprivation of a state-issued benefit.

Because Swan has not alleged any material, state-imposed deprivation that resulted from the allegedly false police report, she fails to state a valid Fourteenth Amendment claim.

### C. Swan fails to state a claim under the Fourth Amendment.

Although Swan's Third Amended Complaint mentions the Fourth Amendment, *see* ECF No. 61 at 1, the complaint does not elaborate on the alleged violation or list it as a claim for relief. Regardless, Swan fails to state a viable Fourth Amendment claim. In her response to the Motion to Dismiss, Swan states that she "pled wrongful initiation of charges without probable cause—a recognized Fourth Amendment violation." ECF No. 114 at 4. While Swan is correct that initiation of criminal charges without probable cause is actionable under the Fourth Amendment as malicious prosecution, *see Thompson v. Clark*, 596 U.S. 36, 39 (2022), Swan has never alleged—and there is no indication that—charges were ever initiated against her. The entry of a 10-96 code in a police report does not constitute the initiation of criminal charges and is not actionable as a malicious prosecution under the Fourth Amendment.

To the extent that Swan contends that the welfare check itself constituted an unconstitutional search or seizure, the Court disagrees. According to Swan's own recitation of the facts, the encounter between herself and law enforcement was "brief, non-confrontational, and concluded without incident within ten minutes." ECF 61 at 5. The responding officer concluded that Swan "did not meet the criteria for emergency detention," and she was not detained. *Id*. Swan therefore fails to state a cognizable Fourth Amendment claim.[7]

### D. Deputy Shields is entitled to qualified immunity.

Additionally, Deputy Shields argues that he is entitled to qualified immunity for Swan's constitutional claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is Plaintiff's burden to establish that the doctrine of qualified immunity does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To do so, Plaintiff must (1) allege facts sufficient to "make out a violation of a constitutional right," and (2) show that the constitutional right "was clearly established at the time of [the official's] alleged misconduct." *Heckford v. City of Pasadena*, No. 4:20-CV-04366, 2022 WL 209747, at *3 (S.D. Tex. Jan. 21, 2022) (Ellison, J.) (quoting *Pearson*, 555 U.S. at 232). A constitutional right is "clearly established" if no reasonable officer would have thought the officer's acts passed constitutional muster. In other words, "qualified immunity is warranted unless no reasonable officer would have acted as the officer did."

---

[7] Swan also brings a claim for declaratory and injunctive relief based on the alleged violations of her First, Fourth, and Fourteenth Amendment rights. ECF No. 61 at 11. Since Swan fails to state a claim for relief under any of these amendments and the declaratory judgment act does not create an independent cause of action, dismissal of this claim is warranted.

*Heckford*, 2022 WL 209747, at *3 (Ellison, J.) (citing *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019)).

Here, Swan has failed to allege facts sufficient to "make out a violation of a constitutional right." *Heckford*, 2022 WL 209747 at *3. Thus, she necessarily fails to establish that Deputy Shields is not entitled to qualified immunity. Even if Swan can be said to have stated a claim for the alleged violations of her constitutional rights, these rights were certainly not "clearly established." Deputy Shields is therefore entitled to qualified immunity.

### E. Swan's *Monell* claim fails because she has failed to allege an underlying constitutional violation.

Swan also alleges that Montgomery County and the Montgomery County Constable's Office are liable under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) for failure to train and supervise Deputy Shields and ratification of his purportedly unconstitutional conduct. Swan bases this claim on a phone call with Captain Atkins, who told her that the Constable's office did not have mechanisms to remove entries from police reports, even if false. ECF No. 61 at 6.

*Monell* provides a mechanism to hold local governments accountable for violations of an individual's constitutional rights "when execution of a government's policy or custom. . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. In order to state a claim against a government entity under *Monell*, therefore, the plaintiff must first successfully state a valid constitutional violation under § 1983. Thus, Swan's *Monell* claims must be dismissed because, as discussed above, she has failed to successfully allege a constitutional violation.

### F. Swan's state law claims are barred by the Texas Tort Claims Act.

Swan also brings claims against Deputy Shields and Montgomery County for defamation and common law fraud. Deputy Shields argues that because he made the contested statements in the course and scope of his official duties, he is immune from suit under the Texas Tort Claims Act (TTCA).

The TTCA states in relevant part:

> If a suit is filed against an employee of a governmental unit based upon conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code §101.106(f). "More succinctly, a defendant is entitled to dismissal upon proof that the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [TTCA]." *Frias v. Hernandez*, 142 F.4th 803, 808 (5th Cir. 2025). (quoting *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017)).

The TTCA defines the term "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Texas Supreme Court has clarified that "[a]n employee's act is *not* within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (emphasis added) (quoting Restatement Third of Agency § 7.07(2) (2006)).

Here, the alleged injuries arose out of Deputy Shields' response to a 911 call and entry of an incident report. These actions were clearly within the course and scope of his employment as a police officer. The truth or falsity of the statements in the report does not change this fact. *See Frias v. Hernandez*, 142 F.4th 803, 806 (5th Cir. 2025) (noting that "Texas law affords state actors broad immunity for acts objectively within the scope of their employment, regardless of their subjective intent"). Because Swan's suit concerns actions taken by Deputy Shields in the course of his employment, it could have been brought against his employer—Montgomery County. The fact that Montgomery County, as a government entity, is immune from liability under the TTCA does not exempt Swan's claims from § 101.106(f)'s election of remedies provision. Rather, the Texas Supreme Court has held that "barring an independent statutory waiver of immunity, tort claims against the government are brought 'under this chapter the TTCA' for subsection (f) purposes even when the TTCA does not waive immunity for those claims." *Alexander*, 435 S.W.3d at 792. Swan's argument that this provision does not apply to intentional torts is incorrect. *Id*. at 790 (dismissing claims of "assault, conspiracy, slander, false arrest, false imprisonment, and malicious prosecution" under the TTCA's election of remedies provision). Swan's state law claims against Deputy Shields in his individual capacity must therefore be dismissed.

To the extent that Swan also alleges state tort claims against Montgomery County, these too must be dismissed because the TTCA does not waive governmental immunity for defamation or fraud-based tort claims.

> **G. Swan's claims against the Montgomery County Constable's Office must be dismissed because Swan has failed to show that the Constable's Office is a separate jural entity.**

13

Swan also brings many of the aforementioned claims against the Montgomery County Constable's Office, which has not appeared and has not yet been properly served.[8] Regardless, the Court finds that Swan's claims against the Constable's Office must be dismissed because Swan fails to allege any facts demonstrating that the office is a jural entity capable of being sued. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). Rather, the proper defendant for Swan's claims against the Constable's Office is Montgomery County.

A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). A governmental department such as the Montgomery County Constable's Office thus cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency jural authority." *Id.* at 313. The "true political entity" in this case is Montgomery County.

"[T]he general rule [is] that law enforcement agencies are not separate governmental entities that can be sued." *Plemons v. Amos*, No. 2:03-cv-421-J, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006) (collecting cases). Additionally, "the plaintiff bears the burden to allege the

---

[8] Swan maintains that the Constable's Office waived service when Attorney Daniel Plake appeared on behalf of Defendnats Deputy Shields and Montgomery Count. Because the Constable's Office never completed the process for waiver of service laid out in Federal Rule of Civil Procedure 4(d), the Court disagrees. *See* FED. R. CIV. PRO. 4(d). Even assuming the Constable's Office was properly served and failed to appear, however, the Court is not obligated to grant default judgment if the factual allegations in the Complaint, even taken as true, do not entitle the plaintiff to relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) ("A default judgment. . . [must be] supported by well-pleaded allegations, assumed to be true.") (internal quotations omitted). Here, Swan's allegations against the Constable's Office fail to state a plausible claim to relief, meaning that she would not be entitled to default judgment even if the Court had determined that default was procedurally appropriate.

county or city has taken 'explicit steps' to grant the department with jural authority." *Jenkins v. Tarrant Cnty. Sheriff's Off.*, No. 4:21-CV-0910-O, 2022 WL 426593, at *7 (N.D. Tex. Feb. 11, 2022), *aff'd*, No. 22-10244, 2023 WL 5665774 (5th Cir. Sept. 1, 2023) (citing *Darby*, 939 F.2d at 313-14).

Here, Swan has not alleged that Montgomery County has taken any "'explicit steps' to grant [the Constable's Office] with jural authority." *Jenkins*, 2022 WL 426593, at *7; *see also Wakat v. Montgomery Cnty.*, 471 F. Supp. 2d 759, 768 (S.D. Tex.), *aff'd sub nom. Wakat v. Montgomery Cnty. Texas*, 246 F. App'x 265 (5th Cir. 2007) (dismissing claims against Montgomery County Sheriff's Department because "[t]he plaintiffs have not demonstrated that the MCSD has been granted such authority by Montgomery County."). Accordingly, the Court dismisses all claims against Montgomery County Constable's Office because Swan has not shown that the Constable's Office is a jural entity capable of being independently sued.

## IV.    CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss (ECF No. 76) is **GRANTED**. Plaintiff's claims against Deputy Shields and Montgomery County are **DISMISSED WITH PREJUDICE**.[9] Swan's claims against the Montgomery County Constable's Office are

---

[9] The Court is aware of Swan's objections to its denial of her Motion for Default Judgment against Montgomery County. *See, e.g.*, ECF Nos. 93; 95; 96; 98; 99; 107; 116. Many of Swan's objections relate to the Court's statement that Montgomery County had not been properly served. ECF No. 90. However, as the Court additionally noted in its order denying default judgment, the more important problem is that

**DISMISSED WITHOUT PREJUDICE**.[10] All other pending motions are hereby **DENIED AS MOOT**.[11]

       **IT IS SO ORDERED.**

    Signed at Houston, Texas on March 24, 2026.

Keith P. Ellison
United States District Judge

---

[10] The docket sheet also lists Captain Michael Atkins as a Defendant. However, Plaintiff's Third Amended Complaint, which is the operative pleading, does not list Captain Atkins as a Defendant. See ECF No. 61. The Court therefore concludes that Plaintiff has voluntarily dismissed any claims against Captain Atkins.

[11] Plaintiff has also filed numerous "Notices," "Objections," and other similar documents. The Court has considered these documents in conjunction with its decision on the Motion to Dismiss. Because the Court concludes that dismissal is warranted notwithstanding the documents submitted by Plaintiff, no further action is necessary as these filings.